## No. 26630

**Denver Urban Renewal Authority, a body corporate and politic of the State of Colorado v. Pillar Of Fire, a Colorado non-profit corporation**

(552 P.2d 23)

Decided July 6, 1976.                    Rehearing denied July 19, 1976.

Clark, Martin and Pringle, Warren O. Martin, for petitioner-appellee.

Thomas Quentin Benson, J. Fred Schneider, for respondent-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This appeal evolves from our decision in *Pillar of Fire v. Denver Urban Renewal Authority*, 181 Colo. 411, 509 P.2d 1250 (1973), which remanded this condemnation proceeding to the trial court for a hearing on specified issues. After a hearing, the trial court made extensive findings of fact and conclusions of law, overruling all objections raised by Pillar of Fire. The trial court concluded that Denver Urban Renewal Authority (DURA) is entitled to condemn the subject property, and thereafter hearings were held to determine the value of the property. We affirm.

The factual background of this case was set out when we first considered the condemnation issues in *Pillar of Fire v. Denver Urban Renewal Authority, supra.* The facts will not be repeated except when necessary for the statement or resolution of the issues which are now before us. In our directions to the trial court on remand, we said:

"The only conclusion which we can draw is that we must balance the interests involved in the controversy before us and recognize that the state must show a substantial interest without a reasonable alternate means of accomplishment if the state is to be constitutionally allowed to take the birthplace of the Pillar of Fire Church, which is alleged to be *sui generis.*

. . . .

"The Pillar of Fire is entitled to a hearing at which the competing interests of the Renewal Authority and the church can be weighed. A court must be given an opportunity to judge whether the Authority's plans for the specific block and the site of the church are so vital to the overall renewal plan that the petitioner's property should be condemned and demolished.

. . . .

". . . . We hold that under these circumstances, the state may be so challenged to justify a use of its power of eminent domain. The District Court must weigh the plans and goals of the Renewal Authority, as they bear on the particular land in question, against the right of the Pillar of Fire Church to maintain a brick structure which the Church claims is unique and does not conform to the general plan for development of the block or the area. The petitioner's claim that the *sui generis* nature of the mother church of the Pillar of Fire prohibits condemnation causes us to apply a balancing test in considering the rights of the parties to this action. . . ." *Pillar of Fire v. Denver Urban Renewal Authority, supra*, pp. 1253-54.

The record establshes that the Skyline Urban Renewal Project was commenced in 1967 and encompasses approximately 33 blocks in lower downtown Denver. This area is one of the older sections of the city, one so blighted by general urban deterioration that nothing less than complete

redevelopment, which is consistent with DURA's plans, will serve to rejuvenate and restore the area. The Pillar of Fire Church was located in the center of one of the blocks within the renewal area. The plan which was adopted provided for acquisition by DURA of most of the private property within the area. Upon acquisition, the property was to be rezoned and redeveloped. All property within the area has been acquired except that which is owned by the Pillar of Fire Church.

■   Pillar of Fire contends that the acquisition of the church property by DURA would interfere with the free exercise and enjoyment of religious worship of the Pillar of Fire Church. The single-most significant factor which compelled this court to adopt a balancing test when this case was first before us was the allegation by Pillar of Fire that this particular church building and site — the subject of the condemnation action — had "unique religious significance" for the denomination. The trial court found that the church property was not *sui generis* and that the contemplated condemnation of the property would not interfere with the free exercise and enjoyment of religious worship by the Pillar of Fire Church. This finding is fully supported by the record.

A lengthy recitation of the facts which belie the contention of Pillar of Fire is not necessary. A few of the more significant findings made by the trial court, however, should be related. The church building is neither the birthplace nor the mother church of the Pillar of Fire denomination. Although this edifice served as the denomination headquarters for a few years, the headquarters were moved to Zarephath, New Jersey in 1908 and have remained there since that time. A sale of the building was actually attempted at one time during its history, but no willing buyers were found. Presently, the building is used only for occasional and limited worship activities by parishioners.[1] Since the 1930's, the denomination's principle place of worship in Denver has been the Alma Temple, which is located not far from the State Capitol Building. For the last thirty years, the building here in issue has been used chiefly as a commercial rooming house. The rooms, according to the testimony, are rented to single men at the rate of $35 to $45 per month.

The contested property is not the only property owned or controlled by Pillar of Fire in Colorado. At least five other worship centers exist in the vicinity of Denver, and extensive property is owned by the church in Westminster where a college, a school, and radio broadcast facilities have been established. Interestingly enough, one of the bishops of the church testified that the church would resist condemnation *of any other church*

---

[1] Once a month, a Tuesday morning service is held in the building. The building is sometimes used for the Jubilee Service, an observance held once a year marking the founding of the church. A radio broadcast emanates from the church via a telephone hookup to transmitter facilities at the church's college campus in Westminster.

*properties* on the grounds of freedom of religion. In fact, the same contention was raised by Pillar of Fire some years ago when a school district attempted to condemn a portion of the church's farm land in Westminster. *See Pillar of Fire v. School District*, 149 Colo. 430, 369 P.2d 552 (1962). The contention of Pillar of Fire that the property now subject to condemnation is *sui generis* is simply without support based upon the factual findings and the record before the trial court.

■ Balanced against Pillar of Fire's contention is the interest of DURA in the subject property. A brief recital of the trial court's findings of fact discloses that DURA has weighty and substantial interests in the church property. These findings of fact were supported by the evidence in the record. DURA conducted an investigation and determined that the success of the Skyline Urban Renewal Project depended in part upon the acquisition of all of the private property in the core of the downtown project area. If scattered buildings were left on blocks located in the core of the project, the desired redevelopment would be prevented. All private property in the core area has been acquired and demolished by DURA except for the Pillar of Fire Church. Full-block development, a key feature of the renewal project, would not be possible if the Pillar of Fire Church were to remain as it is in the center of this particular block.

Moreover, DURA has shown, according to the trial court, a substantial interest in the acquisition of this property, and the condemnation of the church building is vital to the overall success of the urban renewal project. Alternate means of accomplishing DURA's goals, involving open space, parking, and separation of pedestrian and motor traffic, could not be achieved if the building remains in place.

Even if Pillar of Fire had proven that the church building was *sui generis*, the scales tip convincingly in favor of the interests of the Denver Urban Renewal Authority in this case. Accordingly, we affirm the trial court's conclusion that DURA is entitled to condemn the property.

Furthermore, we find no error in the hearing held before the commissioners to determine the value of the property taken.

The constitutional issues which have been reasserted in this appeal were resolved by us in our previous opinion, and, therefore, do not require further discussion.

Accordingly, we affirm.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE HODGES do not participate.