## No. 28171

**David Johnson, Anthony Vigil, and Brent Perkins v. Motor Vehicle Division, Department of Revenue, State of Colorado**

(593 P.2d 1363)

Decided April 30, 1979.                    Rehearing denied May 21, 1979.

Richard M. Borchers, Wayne E. Stockton, for plaintiffs-appellants.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Richard H. Forman, Assistant, General Legal Services Section, for defendant-appellee.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This appeal was taken from a summary judgment in favor of the Motor Vehicle Division of the Department of Revenue, appellee. The appellants filed an action for a declaratory judgment and for injunctive relief to invalidate the provisions of section 42-2-106(3), C.R.S. 1973, asserting that their right to religious freedom was being infringed upon by an unconstitutional application of the statute. We affirm the entry of summary

judgment by the trial court.

The appellants are members of a religious organization known as the Assembly of YHWHHOSHUA. They believe that the Bible directs that they not allow any photograph to be taken of them. They base their belief on a literal interpretation of the second commandment, as pronounced in *Exodus* 20:4, which directs that:

"Thou shalt not make unto thee any graven image, or any likeness of any thing that is in heaven above, or that is in the earth beneath, or that is in the water under the earth."
*See also Deuteronomy* 5:8.

The Motor Vehicle Division of the Department of Revenue has the duty to issue driver's licenses in accordance with the laws of the State of Colorado. Although appellants are conceded to be in all other respects eligible to receive a license to drive, the department has refused to issue them a driver's license because the appellants will not be photographed. The department's refusal to issue a license is predicated on section 42-2-106(3), C.R.S. 1973, which provides:

"(3) Every application for a driver's, minor driver's, or provisional driver's license, and the license issued as a result of said application, shall also contain the photograph of the applicant or licensee. Such photograph shall be taken and processed with equipment leased or owned by the department."

Appellants seek to have section 42-2-106(3) declared unconstitutional, insofar as it applies to them, on the ground that any requirement that they be photographed before they may be issued a driver's license violates their right to the free exercise of their religion, as guaranteed by the *Colorado Constitution* (Article II, Section 4), and by specific provision of the First Amendment to the *United States Constitution,* which commands that:

"Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof . . . ."

■ This mandate was made binding on the states in *Cantwell v. Connecticut,* 301 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). The religious nature of the appellants' belief and practices are conceded, and their sincerity is not questioned. *See Fellowship of Humanity v. County of Alameda,* 153 Cal.App.2d 673, 693, 315 P.2d 395, 406 (1967). Of course, any inquiry into the truth or falsity of appellants' belief is forbidden. *United States v. Ballard,* 322 U.S. 78, 86, 64 S.Ct. 882, 88 L.Ed. 434 (1944).

■ Our analysis of appellants' contention must proceed from the premise that "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." *Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). But "even when the action is in accord with one's religious convictions, [it] is not totally free from legislative restrictions."

*Braunfield v. Brown,* 366 U.S. 599, 603, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1960).

Appellants rely primarily on *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and *Bureau of Motor Vehicles v. Pentecostal House of Prayer, Inc.,* 380 N.E.2d 1225, (Ind. 1978), to support their position. We decline to follow the Indiana court which relied upon *Sherbert v. Verner.*

In *Sherbert v. Verner, supra,* Sherbert, a Seventh-Day Adventist, was discharged by her employer because she would not work on Saturday, the Sabbath day of her faith. She was denied unemployment compensation benefits on the ground that she had refused, "without good cause," to accept suitable work that had been offered to her. The United States Supreme Court held that the free exercise of religion provisions of the First Amendment prevented the State of South Carolina from impinging on Sherbert's religious beliefs by denying unemployment compensation after she was terminated for refusing to work on her Sabbath.

■ The test employed in *Sherbert v. Verner, supra,* has been characterized as having three elements which must be weighed in determining whether the governmental interests involved "overbalance" the right to the free exercise of religion.

"[F]irst, the importance of the secular values underlying the governmental regulation; second, the degree of proximity and necessity that the chosen regulatory means bears to the underlying value; and third, the impact that an exemption for religious reasons would have on the over-all regulatory program." *Gianella, Religious Liberty, Non-establishment, and Doctrinal Development: Part I, The Religious Liberty Guarantee,* 80 *Harv. L. Rev.* 1381, 1390 (1967).

In brief, the state must demonstrate that its policies are backed by a compelling state interest and that no alternative less restrictive of religious freedoms will serve. *See Pillar of Fire v. Denver Urban Renewal Authority,* 181 Colo. 411, 509 P.2d 1250 (1973); *Denver Urban Renewal Authority v. Pillar of Fire,* 191 Colo. 238, 552 P.2d 23 (1976).

The department has accepted appellants' assertion that section 42-2-106(3), C.R.S. 1973, imposes a burden on the free exercise of the religion followed by the appellants. Without a driver's license, appellants contend, they are unable to secure employment or to attend religious services. Weighed against these burdens are the compelling reasons that the state has asserted for requiring that appellants' photographs appear on any driver's license issued to them.

■ The department asserts that a photograph is a unique method of identification and assists in the identification of those who operate motor vehicles. Appellants contend that a driver's license which was marked by their thumbprint and which contained their physical description would suffice. However, only a photograph can provide a police officer who

makes a traffic stop with a ready and instantaneous means of determining that the person tendering the driver's license is indeed the person to whom the license was issued. *See* section 42-2-128(1), C.R.S. 1973. The exigencies of law enforcement cannot brook the delay inherent in other means of identification.

Moreover, the state asserts other interests besides those directly related to the function of a driver's license. The driver's license and the Colorado state "identification card," which also must bear the possessor's photograph, *see* section 42-2-403(1), C.R.S. 1973, are the only recognized state-wide means of ready identification. The department also maintains a file of the negatives from which the driver's license photographs are developed. The negatives provide a unique method of identification for use in police photographic lineups and offer a means for identifying victims of natural disaster and traffic accidents.

The General Assembly, with an eye to the key role played by the driver's license in today's society, has endeavored to protect those who rely on the identification provided by a driver's license by exempting them from liability in section 42-2-112(5), C.R.S. 1973, in these words:

"(5) Any other provision of law to the contrary notwithstanding, no liability or other sanctions shall be imparted to any person who relies upon the date of birth or identification as set out on any license issued pursuant to this article if such date of birth or identification should be later proved incorrect or fraudulently entered upon said license."

The identification card which serves as an alternative means of identification to the driver's license is only issued to a person over eighteen years of age who does not have a Colorado driver's license. Section 42-2-401, C.R.S. 1973. Moreover, no person can operate a motor vehicle without having a valid driver's license in his possession and must display the license upon demand of a law enforcement officer. Section 42-2-113, C.R.S. 1973.

It is apparent that *Sherbert v. Verner, supra,* is a fundamentally different case than the one which is before us for review. The purpose of the regulatory scheme at issue in *Sherbert v. Verner* was to provide temporary relief for the involuntarily unemployed. The recognition of Sherbert's First Amendment claim did not conflict with the purpose of the requirement that she accept suitable work. In this case, photographic identification is an indispensable underpinning of the purposes underlying the state's interest in issuing driver's licenses. To provide exemptions would undermine its essential purpose. The ready certainty inherent in photographic identification would be lost. *Denver Urban Renewal Authority v. Pillar of Fire, supra,* at 25.

The regulations struck down in *Sherbert v. Verner, supra,* provided a working mechanism by which applicants for unemployment compensation could seek exemption for "good cause." *Id.* at 400, n. 3. No

such mechanism is available here. The only state interest advanced in *Sherbert v. Verner* was the untested assertion that the impediment was necessary to forestall spurious claims for relief. More wide-ranging interests are at stake in this case. The regulatory program which was challenged in *Sherbert v. Verner* allowed an automatic exemption for those whose beliefs precluded work on Sunday. No such religious discrimination is present under section 42-2-106(3).

Finally, in the context of the regulations struck down in *Sherbert v. Verner, supra,* Sherbert could not be put to the choice of following those regulations or adhering to the dictates of her conscience. South Carolina was required to accommodate her beliefs. However, in this case, the state's interest in photographic identification is so compelling that the appellants' challenge must fall.

Accordingly, we affirm.

MR. JUSTICE PRINGLE dissents.

MR. JUSTICE CARRIGAN does not participate.