728 F.2d 1121
 Frances J. QUARING, Appellee,
v.
Harry "Pete" PETERSON, Director of the Department of Motor
Vehicles, State of Nebraska; William Edwards,
Deputy Director of the Department of
Motor Vehicles, State of
Nebraska, Appellants.
 No. 83-1105.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 10, 1983.
Decided March 1, 1984.
 
 Paul L. Douglas, Atty. Gen., Ruth Anne E. Galter, Asst. Atty. Gen., Lincoln, Neb., for the State of Nebraska, its Agencies, and its Officers.
 Thomas C. Lansworth, for Bauer, Galter & Geier, Lincoln, Neb., for appellee.
 Before BRIGHT, JOHN R. GIBSON, and FAGG, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 Frances J. Quaring sought a Nebraska driver's license but refused to have her photograph taken and affixed to the license as required by Nebraska law. For this reason, Nebraska Department of Motor Vehicles officials Peterson and Edwards (Nebraska officials) refused Quaring's application for a driver's license. Quaring then brought suit against the Nebraska officials seeking to obtain a court order requiring them to issue her a valid driver's license. She contended that her religious convictions prevented her from being photographed and that the refusal by the Nebraska officials to issue her a driver's license violated her first amendment right to the free exercise of her religion. The district court[1] agreed with Quaring's contention and enjoined the Nebraska officials from refusing to issue her a driver's license notwithstanding her refusal to be photographed.
 
 
 2
 The Nebraska officials bring this appeal, arguing that 1) the statute requiring driver's licenses to contain a photograph of the licensee does not burden Quaring's exercise of her religion, 2) that even if the photograph requirement burdens her religion, the state's interests outweigh that burden, 3) that no less restrictive alternative would adequately serve the state's interests, and 4) that excepting Quaring from the photograph requirement on the basis of her religion would violate the establishment clause. We reject these arguments and affirm the district court.
 
 
 3
 I. Background.
 
 
 4
 Under Nebraska law, driver's licenses issued after January 1, 1978 must, with several exceptions,[2] contain a color photograph of the licensee. See Neb.Rev.Stat. Sec. 60-406.04 (Reissue 1978). Quaring meets the requirements for obtaining a driver's license except that she refuses to allow her photograph to appear on her license. For this reason, she has been unable to obtain a driver's license.
 
 
 5
 Quaring's refusal to have her photograph taken is based on religious convictions. She believes in a literal interpretation of the Second Commandment, which states,
 
 
 6
 Thou shalt not make unto thee any graven image or likeness of anything that is in heaven above, or that is in the earth beneath, or that is in the water under the earth.
 
 
 7
 Exodus 20:4; Deuteronomy 5:8. Quaring believes that the Commandment is violated by creating a likeness of God's creation.
 
 
 8
 Quaring's belief extends beyond her refusal to allow her photograph to appear on her driver's license. She believes the Second Commandment forbids her from possessing any image having a likeness of anything in creation. She possesses no photographs of her wedding or family, does not own a television set, and refuses to allow decorations in her home that depict flowers, animals, or other creations in nature. When she purchases foodstuffs displaying pictures on their labels, she either removes the label or obliterates the picture with a black marking pen.
 
 
 9
 Although Quaring is not a member of an organized church, she considers herself a Christian and attends a Pentecostal church in a nearby town with her family. She also participates in nondenominational Bible study groups. According to Quaring, Pentecostals do not share her belief that the Second Commandment forbids the making of photographs or images. Rather, her belief stems principally from her own study of the Bible.
 
 
 10
 After unsuccessfully attempting to obtain an exemption from the photograph requirement, Quaring brought suit against the director and deputy director of the Nebraska Department of Motor Vehicles under 42 U.S.C. Sec. 1983 and 28 U.S.C. Sec. 1343, alleging a deprivation of her right to the free exercise of religion. The district court ruled that the state's photograph requirement, as applied, violates Quaring's right to the free exercise of religion, and ordered Nebraska officials to issue her a driver's license.
 
 
 11
 II. Discussion.
 
 
 12
 Quaring's exercise of her religious beliefs directly conflicts with Nebraska's requirement that driver's licenses contain a photograph of the licensee. Although the photograph requirement plainly serves a legitimate and important state interest, it may not be applied in a manner that unduly burdens Quaring's free exercise of her religion. See Thomas v. Review Board, 450 U.S. 707, 717, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981). Before the state may refuse to issue Quaring a driver's license, "[I]t must appear either that the State does not deny the free exercise of religious belief by its requirement, or that there is a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." Wisconsin v. Yoder, 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1971).
 
 
 13
 A. Quaring's Religious Beliefs.
 
 
 14
 As a threshold requirement, Quaring must demonstrate that her refusal to be photographed is grounded upon a sincerely held religious belief. See Stevens v. Berger, 428 F.Supp. 896, 899 (E.D.N.Y.1977). Although a religious belief requires something more than a purely secular philosophical or personal belief, Wisconsin v. Yoder, supra, 406 U.S. at 215-16, 92 S.Ct. at 1533-34, courts have approved an expansive definition of religion. See United States v. Seeger, 380 U.S. 163, 165-66, 85 S.Ct. 850, 853-54, 13 L.Ed.2d 733 (1965) (test is whether "a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God"); see also International Society for Krishna Consciousness, Inc. v. Barber, 650 F.2d 430, 440 (2d Cir.1981); Founding Church of Scientology v. United States, 409 F.2d 1146 (D.C.Cir.), cert. denied, 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969). See generally Freeman, The Misguided Search for the Constitutional Definition of "Religion", 71 Geo.L.J. 1519 (1983).
 
 
 15
 Quaring's beliefs, though unusual in the twentieth century, are religious in nature. The Second Commandment, the basis for her beliefs, expressly forbids the making of "any graven image or likeness" of anything in creation. Exodus 20:4; Deuteronomy 5:8. Quaring's refusal to allow herself to be photographed is simply her response to a literal interpretation of the Second Commandment, not unlike the response of the Old Order Amish to the Epistle of Paul to the Romans. In Wisconsin v. Yoder, supra, the Supreme Court noted that the daily life and religious practices of the Amish were a response to a literal interpretation of Paul's exhortation to "be not conformed to this world," and held that their refusal to send their children to school beyond the eighth grade was religious in nature. 406 U.S. at 216, 92 S.Ct. at 1533. Cf. Stevens v. Berger, supra, 428 F.Supp. at 902. Moreover, Quaring's literal interpretation of the Second Commandment receives some support from historical and biblical tradition. At trial, Dr. John Turner, a professor of religious studies, testified that Quaring's beliefs can be analogized to the Hebrew concept that images of things in creation are an attempt to capture God and His creations, and that such an attempt is forbidden.[3]
 
 
 16
 Although members of the Pentecostal group with whom Quaring associates do not share her belief in a literal interpretation of the Second Commandment, that does not lessen the religious nature of her convictions. As the Supreme Court recently stated,
 
 
 17
 [T]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect. Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow [adherent] more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation.
 
 
 18
 Thomas v. Review Board, supra, 450 U.S. at 715-16, 101 S.Ct. at 1430-31. Although Quaring's beliefs might seem unreasonably doctrinaire to many, that "does not mean that they can be made suspect before the law." United States v. Ballard, 322 U.S. 78, 87, 64 S.Ct. 882, 886, 88 L.Ed. 1148 (1943).
 
 
 19
 It is also clear that Quaring sincerely holds her religious beliefs. As the district court observed,
 
 
 20
 At trial [Quaring] appeared ready to support her interpretation of the Bible, based on her knowledge of several portions of the Old Testament. In addition, [her] behavior in every way conforms to the prohibition as she understands it: her home contains no photographs, television, paintings, or floral-designed furnishings, and, as she testified, she goes so far as to remove or obliterate pictures on food containers.
 
 
 21
 Because Quaring's beliefs are based on a passage from scripture, receive some support from historical and biblical tradition, and play a central role in her daily life, they must be characterized as sincerely held religious beliefs.
 
 
 22
 B. The Burden on Quaring's Religion.
 
 
 23
 Having examined the religious nature and sincerity of Quaring's beliefs, we next turn to the question whether Nebraska's photograph requirement infringes upon those beliefs. Although the Nebraska officials correctly point out that the photograph requirement in no way compels Quaring to act in violation of her conscience, the Supreme Court has noted that "this is only the beginning, not the end, of our inquiry." See Sherbert v. Verner, 374 U.S. 398, 403-04, 83 S.Ct. 1790, 1793-94, 10 L.Ed.2d 965 (1963). Under the proper analysis, a burden upon religion exists when "the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, * * * thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Board, supra, 450 U.S. at 717-18, 101 S.Ct. at 1431-32.
 
 
 24
 Clearly, a burden upon Quaring's free exercise of her religion exists in this case. The state refuses to issue Quaring a driver's license unless she agrees to allow her photograph to appear on the license, a condition that would violate a fundamental precept of her religion. Moreover, in refusing to issue Quaring a driver's license, the state withholds from her an important benefit. Quaring needs to drive a car for numerous daily activities, which include managing a herd of dairy and beef cattle, helping her husband manage a thousand-acre farming and livestock operation, and working as a bookkeeper in a community ten miles from home. By requiring Quaring to comply with the photograph requirement, the state places an unmistakable burden upon her exercise of her religious beliefs.
 
 
 25
 The burden on Quaring is indistinguishable from the burden placed upon a Sabbatarian by the state in Sherbert v. Verner, supra. In that case, the Supreme Court held that in denying unemployment benefits to a member of the Seventh-Day Adventist Church who refused to work on Saturdays, the Sabbath of her faith, the state violated her right to the free exercise of religion. 374 U.S. at 402, 83 S.Ct. at 1792. Assessing the burden of the denial of benefits on the Sabbatarian's exercise of her religion, the Court commented,
 
 
 26
 The [denial] forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion [not working on Saturdays] in order to accept work, on the other hand.
 
 
 27
 Id. at 404, 83 S.Ct. at 1794. Similarly, Nebraska's photograph requirement puts Quaring to the choice of following an important precept of her religion or forgoing the important privilege of driving a car.
 
 
 28
 C. Balancing the State's Interest Against the Burden on Religion.
 
 
 29
 Although Nebraska's photograph requirement burdens Quaring's exercise of her religious beliefs, that does not in itself entitle her to an exemption. Not all burdens upon religion violate the free exercise clause. See United States v. Lee, 455 U.S. 252, 257-58, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982). The state may justify a limitation on religious liberty by showing that it is the least restrictive means of achieving a compelling state interest. Thomas v. Review Board, supra, 450 U.S. at 718, 101 S.Ct. at 1432. In articulating the standard the state must meet, the Supreme Court has said that "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." Wisconsin v. Yoder, supra, 406 U.S. at 215, 92 S.Ct. at 1533.
 
 
 30
 The Nebraska officials argue that Quaring's interest in exercising her religion must be subordinated to the state's more compelling interest in requiring that driver's licenses contain a photograph of the licensee. In weighing the competing interests, we examine not only the substantial state interests that the photograph requirement generally serves, but also whether an exemption to the requirement would impair the state's ability to achieve its objective. Wisconsin v. Yoder, supra, 406 U.S. at 221, 92 S.Ct. at 1536; see also United States v. Lee, supra, 455 U.S. at 259, 102 S.Ct. at 1056 (court must inquire whether accommodating exercise of religion will unduly interfere with fulfillment of government interest); L. Tribe, American Constitutional Law Sec. 14-10, at 855 (1978) (crucial issue in free exercise cases is state's interest in denying exemption, not in maintaining underlying rule or program). To prevail, the Nebraska officials must demonstrate that their refusal to exempt Quaring from the photograph requirement serves a compelling state interest.[4]
 
 
 31
 In justifying their refusal to grant Quaring an exemption to the photograph requirement, the Nebraska officials advance several state interests. First, they point out that by ensuring that only persons with valid driver's licenses operate motor vehicles, the state promotes a compelling interest in public safety. Cf. Delaware v. Prouse, 440 U.S. 648, 659, 99 S.Ct. 1391, 1399, 59 L.Ed.2d 660 (1979). They contend that only driver's licenses containing a photograph of the licensee can provide police officials with an accurate and instantaneous means of identifying a motorist. For this reason, at least 47 states require photographs of the licensee to appear on driver's licenses.[5] The Nebraska officials contend that an exemption to the photograph requirement would undermine the state's interest in ensuring that only licensed motorists drive on its roads.
 
 
 32
 Although quick and accurate identification of motorists surely constitutes an important state interest, we disagree with the Nebraska officials' contention that the state's interest is so compelling as to prohibit selective exemptions to the photograph requirement. Indeed, Nebraska law already exempts numerous motorists from having a personal photograph on their license. At trial, the associate director of the Department of Motor Vehicles testified that photographs of the licensee are not required on learner's permits, school permits issued to farmers' children, farm machinery permits, special permits for those with restricted or minimal driving ability, or temporary licenses for individuals outside the state whose old licenses have expired. In addition, motorists licensed in the few states that do not require photograph licenses presumably drive through Nebraska on occasion, and those persons would be unable to present driver's licenses containing their photographs. Because the state already allows numerous exemptions to the photograph requirement, the Nebraska officials' argument that denying Quaring an exemption serves a compelling state interest is without substantial merit.
 
 
 33
 The Nebraska officials also argue that the state's compelling interest in ensuring the security of financial transactions justifies their refusal to exempt Quaring from the photograph requirement. Again, we disagree. Although a photograph license obviously serves an important state interest in facilitating the identification of persons writing checks or using credit cards, granting Quaring an exemption will not undermine that interest. Many people already engage in financial transactions without the benefit of a photograph license for identification: some are exempt from the photograph requirement, and some do not have any license because they do not drive. Issuing Quaring a license without her photograph places her in the same position as these people. In any event, the state may still achieve its interest in ensuring the security of financial transactions because people may freely refuse to do business with Quaring if she is unable to present adequate identification.
 
 
 34
 Finally, the Nebraska officials argue that the administrative burden of considering applications for exemptions from the photograph requirement also constitutes a compelling state interest. They point out that establishing uniform criteria for granting exemptions will be difficult because 95 testing centers in Nebraska issue driver's licenses. They also argue that the religious nature of the claimed exemption will exacerbate this problem. The state would have to probe into the sincerity and religious nature of an applicant's belief, and applicants could easily show religious grounds as the basis for their objection to the photograph requirement. The Nebraska officials fear that unless the state establishes an elaborate and expensive mechanism to consider requests for religious exemptions, exemptions to the photograph requirement will be available virtually on demand.
 
 
 35
 Although Nebraska plainly has an interest in avoiding the administratively cumbersome task of considering applications for religious exemptions, its interest is not compelling. A state's interest in avoiding an administrative burden becomes compelling only when it presents administrative problems of such magnitude as to render the entire statutory scheme unworkable. See Sherbert v. Verner, supra, 374 U.S. at 408-09, 83 S.Ct. at 1796-97. The record contains no evidence, however, that allowing religious exemptions to the photograph requirement will jeopardize the state's interest in administrative efficiency. Persons seeking an exemption from the photograph requirement on religious grounds are likely to be few in number. Indeed, few persons will be able to demonstrate the sincerity of their religious beliefs by showing that they possess no photographs or pictures. Furthermore, the few persons who make legitimate requests for exemptions from the photograph requirement will cause the Nebraska officials little inconvenience. Because persons requesting an exemption for religious beliefs based on the Second Commandment can easily demonstrate the sincerity and valid nature of their belief as Quaring offered to do, the state need not be greatly burdened by requests for an exemption. At least on this record, the Nebraska officials have not demonstrated that giving an exemption for photographs to Quaring and others holding similar beliefs will cause any undue administrative burden. Thus, none of the interests the Nebraska officials advance are sufficient to justify the burden upon Quaring's religious liberty.
 
 
 36
 D. Establishment of Religion.
 
 
 37
 The Nebraska officials argue that providing an exemption for Quaring on the basis of her religion creates an impermissible establishment of religion. We disagree. In some cases, the free exercise clause requires a state to make a reasonable accommodation of religion. See O'Hair v. Andrus, 613 F.2d 931, 935 (D.C.Cir.1979). Such accommodation does not constitute an establishment of religion. See Thomas v. Review Board, supra, 450 U.S. at 719-20, 101 S.Ct. at 1432-33; Sherbert v. Verner, supra, 374 U.S. at 409, 83 S.Ct. at 1796.
 
 
 38
 III. Conclusion.
 
 
 39
 Accordingly, for the reasons set forth in this opinion, we affirm the district court's issuance of an injunction requiring the Nebraska officials to issue Quaring a driver's license without requiring her to be photographed.
 
 
 40
 FAGG, Circuit Judge, dissenting.
 
 
 41
 I respectfully dissent. The interest advanced by the state statute is, in my opinion, of sufficient magnitude to justify an indirect burden on Quaring's free exercise of religion. The majority, while recognizing that a photographic license requirement "plainly serves a legitimate and important state interest," concludes that granting Quaring special dispensation from the requirement will not unduly hinder the state's accomplishment of its legitimate objective. I cannot agree.
 
 
 42
 Nebraska's photographic license requirement advances the state's interest in public safety on the streets and highways by providing police officers in the field with an accurate and instantaneous means of identifying motorists. Significantly, a police officer arriving at the scene of an accident or stopping a vehicle in connection with a traffic violation or suspected criminal activity is assured that the individual displaying the license is in fact the individual to whom the license was issued. As noted in the majority opinion, the fact that 47 of the 50 states require a photographic driver's license indicates the unique advantage derived from this instantaneous identifier.
 
 
 43
 The majority does not attempt to advance any less restrictive means of accomplishing the state's compelling interest in "quick and accurate identification of motorists." Rather, the majority states that in weighing the competing interests involved, it is necessary to consider whether granting "selective exemptions" to the state's requirement would impair the state's ability to achieve its objective. This approach simply ignores or casts aside the state's legitimate interest in assuring instantaneous identification for all of its regular license holders. I am convinced that accommodation of Quaring's religious practice by issuance of a driver's license lacking a photographic identifier would "unduly interfere with fulfillment of the governmental interest." United States v. Lee, 455 U.S. 252, 259, 102 S.Ct. 1051, 1056, 71 L.Ed.2d 127 (1982). "The ready certainty inherent in photographic identification would be lost." Johnson v. Motor Vehicle Division, 197 Colo. 455, 593 P.2d 1363, 1365 (1979). To downplay the impact of granting selective exemptions to regular license holders, the majority attaches significance to the fact that Nebraska exempts certain categories of permittees and temporary licensees from the photograph requirement; however, the limitations placed upon these provisional operators deny any meaningful comparison with the state's regular license holders.
 
 
 44
 I have no quarrel with the majority's observation that Quaring may experience daily inconvenience because she cannot drive a motor vehicle. Her difficulties, however, are not insurmountable and she is not the only person that has been faced with the need to make life-style adjustments precipitated by nonconformity with driver's license requirements. Not insignificantly, and as the majority notes, Quaring's religious beliefs are "unusual in the twentieth century" and "the photographic requirement in no way compels Quaring to act in violation of her conscience." I cannot say that the state's legitimate requirement of a photographic identifier has placed impermissible pressure on Quaring to modify her behavior and violate her beliefs to the end of obtaining driving privileges upon the roadways of Nebraska.
 
 
 45
 "[W]e are a cosmopolitan nation made up of people of almost every conceivable religious preference. * * * Consequently, it cannot be expected, much less required, that legislators enact no law regulating conduct that may in some way result in * * * disadvantage to some religious sects * * *." Braunfeld v. Brown, 366 U.S. 599, 606, 81 S.Ct. 1144, 1147, 6 L.Ed.2d 563 (1961). In my view the state's compelling interest in having a photographic verification of identity upon its driver's licenses outweighs the incidental burden on Quaring's free exercise of religion. This is an instance where a religious belief must yield to the common good. I would reverse.
 
 
 
 [1]
 The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska
 
 
 [2]
 The statute does not require photographs of the licensee on learner's permits, school permits, farm machinery permits, special permits for those with restricted or minimal driving ability, and temporary licenses for Nebraska residents who are outside Nebraska when their licenses expire. Neb.Rev.Stat. Sec. 60-406.04 (Reissue 1978)
 
 
 [3]
 In cases involving the religion clauses, courts sometimes cite authoritative works recognizing certain religious beliefs as supplemental evidence of the religious nature of a litigant's beliefs. See, e.g., United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1964); Stevens v. Berger, supra. Although the Nebraska officials do not seriously contest the sincerity and religious nature of Quaring's beliefs, we have briefly surveyed the literature discussing the Second Commandment's prohibition against the making of likenesses of God's creation
 The Commandments, including the Second Commandment, remain fundamental tenets of the Jewish (and the Christian) faith, as they were of the ancient Jewish faith, and within Judaism have been the subject of extensive interpretation and commentary. Some of that interpretation and commentary of the Second Commandment lends support to Quaring's personal interpretation. For example, included in early Hebrew religious beliefs were views prohibiting the reproduction of images:
 The Bible (Ex. 20:4) forbade the "graven image" in the most explicit fashion, more categorically and comprehensively than the mere likeness. Hence, while the representation of human or animal figures on a plane surface was condoned or permitted most of the time during the periods in question, greater difficulties were constantly raised with regard to three-dimensional sculptures in the round. Indeed, in some Orthodox circles, even making an impression with a seal bearing the human or animal form was considered religiously objectionable, since by doing so a man actually "made" a graven image, even though not for worship or veneration. 14 Ency. Judaica 1059 (1971). (Emphasis added).
 Even modern-day interpretation of Jewish law lends some support to views similar to Quaring's. Writing in a Hebrew-language publication, Rabbi Menashe Klein, Dean of Yeshiva Beth Shearim, Brooklyn, New York (a school for advanced Hebrew studies), argues that a person has a right to prevent others from taking his picture against his will. 7 RESPONSA MISHNE HALACHOTH Sec. 114 (1977). Rabbi Klein observes that while the dominant position in Jewish law, as well as custom and practice, permits the photographing of human beings, an authoritative, albeit minority, position prohibits photographs of humans, especially of the face. To support his position, Rabbi Klein cites the work of the noted Polish authority Rabbi Malkiel Zevi Halevi Tennenbaum, who in 3 RESPONSA DIVREI MALKI'EL Sec. 58 (1897), opines that the taking of pictures violates the Second Commandment. Rabbi Klein also cites the work of the German scholar Rabbi Jacob Emden (1697-1776) in 1 RESPONSA SHE'ELAT YAVEZ Sec. 170, who reports that his father, Rabbi Zevi Hirsch Ashkenazi, Chief Rabbi of Hamburg and later of Amsterdam, opposed any portraits of himself. Rabbi Klein concludes, therefore, in his 1977 Responsum that one who, out of sincerity and piety, wishes to conduct himself in accordance with this stringent view of the Second Commandment may do so. Accordingly, others must respect that person's freedom of religious expression and refrain from taking his photograph against his wishes.
 (The court expresses its appreciation to Professor Dov I. Frimer, Director, Institute of Jewish Law, Touro College School of Law, Huntington, New York, who supplied the court with the text and a translation of Rabbi Klein's Responsum.)
 
 
 [4]
 Three courts have considered claims by licensees who objected on religious grounds to similar photograph requirements. Two courts ruled that the state's refusal to exempt the objecting licensees served a compelling state interest, see Dennis v. Charnes, 571 F.Supp. 462 (D.Colo.1983); Johnson v. Motor Vehicle Div., 197 Colo. 455, 593 P.2d 1363 (1979), and one court ruled that such a refusal does not serve a compelling state interest. See Bureau of Motor Vehicles v. Pentecostal House, 269 Ind. 361, 380 N.E.2d 1225 (1978)
 
 
 [5]
 Notably, however, one of the Nation's most populous states, New York, does not require photographs on driver's licenses