TOM LOFTUS, Chairperson Committee on Assembly Organization
The Committee on Assembly Organization has requested my opinion as to whether section 343.17(2), Stats., and sectionTrans 102.03(1)(b) of the Wisconsin Administrative Code impermissibly burden the free exercise of religion so as to violate the first
and fourteenth amendments to the United States Constitution or article 1, section 18, of the Wisconsin Constitution.
Section 343.17(2) requires a driver's license to "contain the licensee's photograph." Section 343.14(3) empowers the Department of Transportation (DOT) to make exceptions as it "deems . . . appropriate." DOT's rule, section 102.03, provides:
 (1) As provided by s. 343.14 (3), Stats., a license without photograph shall be issued when:
. . . .
 (b) The person's religion does not allow a photograph to be taken. To qualify for the exemption, the following shall be furnished to the department.
 1. A signed statement by a member of the clergy of his or her religion certifying the applicant is a member of the congregation and that photographing is prohibited by the religion, and
 2. A copy of the certificate of tax exempt status from the internal revenue service for that congregation.
Unquestionably DOT's statutory authority to make whatever exceptions it "deems . . . appropriate" is broad enough to excuse religious objectors from the photo license requirement. The issue becomes whether DOT's rule meets constitutional standards.
It is equally certain that the administrative rule does not interfere with the free exercise of religion. To the contrary, by recognizing the validity of a religious objection the rule permits the free *Page 116 
exercise. The free exercise question would arise only if the statute or rule refused to recognize a religious objection. SeeQuaring v. Peterson, 728 F.2d 1121 (8th Cir. 1984), aff'd byequally divided court without opinion, 105 S.Ct. 3492 (1985) (holding that states must recognize a religious objection to photo requirement);[1] Bureau of Motor Vehicles v. PentecostalHouse, 269 Ind. 361, 380 N.E.2d 1225 (1978) (state must recognize religious objection); Johnson v. Motor Vehicle Division, Etc.,593 P.2d 1363 (Colo. 1979) (state need not recognize religious objection); Dennis v. Charnes, 571 F. Supp. 462 (D. Colo. 1983) (state need not recognize religious objection).
But the analysis does not end here. Even if a law does not offend the free exercise clause, it must withstand examination under the establishment clause. In the words of thefirst amendment to the United States Constitution, the government "shall make no law respecting an establishment of religion." In the words of the Wisconsin Constitution, the Legislature may give no "preference . . . to any religious establishments." Wis. Const. art. I, § 18.
I conclude that DOT's administrative rule violates the religious establishment clauses of both the federal and state constitutions. The rule honors the religious objection only of citizens (a) whose religious faith has clergy and a congregation, (b) whose faith has a tenet prohibiting such photographs, and (c) whose congregation enjoys tax exempt status. The fatal constitutional error consists in advancing such religions by giving them a preferred status over other, equally sincere religious objections.
The test for an establishment clause violation is virtually the same under both constitutions. See American Motors Corp. v. ILHRDept., 93 Wis.2d 14, 29-30, 286 N.W.2d 847 (Ct.App. 1979). The guiding criteria were enunciated in Committee For PublicEducation v. Nyquist, 413 U.S. 756, 773 (1973).
 Under this test (hereafter referred to as the Nyquist
test) the law in question must: (1) reflect a clearly secular legislative purpose; (2) have a primary effect which neither advances nor inhibits religion; and (3) avoid excessive governmental entanglement with religion. The principle underlying all three of these prongs *Page 117 
is that the government should remain neutral in all matters concerning religion.
American Motors Corp. v. ILHR Dept., 93 Wis.2d at 30.
The DOT rule plainly fails the second Nyquist test. The rule's primary effect advances religion by making the above-described religious establishments more attractive. Further, the rule inhibits religion by discouraging those not members of the preferred religious establishment, but believers nevertheless in the religious tenet, from adhering to or practicing the unfavored faith. The Constitution protects more than those who belong to tax exempt churches; it protects those religious beliefs that are sincere, meaningful and occupy the life of its possessor "parallel to that filled by the orthodox belief in God." UnitedStates v. Seeger, 380 U.S. 163, 165-66 (1965).
Case law supports my opinion. In Kolbeck v. Kramer,84 N.J. Super. 569, 202 A.2d 889 (1964), a state university denied admission to a student who objected to vaccination on religious grounds. Admission was denied because the objector was not a member of the Christian Science faith. Declaring the denial unconstitutional, the court said: "Membership in a recognized religious group cannot be required as a condition of exemption from vaccination under statute and constitutional law." Kolbeck,202 A.2d at 893. Another court, stressing the importance of governmental neutrality toward religion, struck an immunization law that excepted only those belonging to the World-wide Church of God or the Church of Christ Scientist, saying:
 The exemption in Maryland's immunization statute contravenes this principle of governmental neutrality regarding different religious beliefs. Section 7-402(b) permits only members or adherents of certain religions to apply for and obtain exemptions from the immunization requirement. By limiting the availability of the exemption, subsection (b) has the effect of respecting the personal religious beliefs and practices of those who happen to be members or adherents of the two faiths that have been recognized while overlooking the religious beliefs and practices of those such as the petitioner.
 However broadly the phrase "recognized church or religious denomination" could reasonably be construed, the statutory language certainly fails to encompass personal religious beliefs like *Page 118 
Davis's which are not associated with any church or denomination. As far as the government is concerned, however, such beliefs are entitled to equal respect.
Davis v. State, 451 A.2d 107, 113-14 (Md.Ct.App. 1982).
The discriminatory nature of the administrative rule is even more pronounced by its denial of an exemption to the adherent of a faith meeting all DOT's criteria except tax exempt status. A particular religious congregation might choose to give up tax exempt status in order to influence legislation. See26 U.S.C. § 501(c)(3) and (h)
To be clear on the terms of this opinion, I have not concluded that DOT must honor religious objections. The courts are split on that question, and I have not formed an opinion. Rather, DOT's present rule unlawfully discriminates in favor of certain religious faiths at the expense of others, and it thereby violates the establishment clauses of the state and federal constitutions.
BCL: CDH
[1] This affirmance does not constitute agreement by the United States Supreme Court with the court below inasmuch as affirmance was by an evenly divided vote. See Neil v. Biggers, 409 U.S. 188,190-92 (1972). *Page 119