**William P. DENNIS, Plaintiff,**

v.

**Alan CHARNES, Director of Revenue, State of Colorado and the State of Colorado, Defendants.**

**Civ. A. No. 83–C–1154.**

United States District Court, D. Colorado.

Oct. 21, 1986.

David R. Juarez, Westminster, Colo., for plaintiff.

Richard Hill, Denver, Colo., for defendants.

## MEMORANDUM FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

CARRIGAN, District Judge.

Plaintiff William P. Dennis commenced this action seeking an order to require Colorado state licensing authorities to issue him a driver's license without a photograph. He contends that submitting to a photograph, or carrying a license with a photograph on it, would violate his religious belief that God has forbidden the making of, and has ordered the destruction of, graven images and likenesses. He asserts that the First Amendment to the United States Constitution entitles him to the requested relief.[1]

Defendants are the State of Colorado and its Director of Revenue, Alan Charnes, whose official duties include authority over drivers' licensing. The defendants contend that the applicable statute, Colo.Rev.Stat. § 42–2–112 (1973), forbids their issuing a driver's license unless the plaintiff submits to a photograph and the photograph is made part of his license. Defendants assert that neither that statute nor its application to the plaintiff violates the plaintiff's free exercise of religion.

Trial to the court was held August 11, 1986. Jurisdiction founded on 28 U.S.C. §§ 1331 and 1343(3) is undisputed. This memorandum constitutes my findings of fact and conclusions of law as required by Rule 52(a), Fed.R.Civ.P.

The facts are largely uncontested. In April 1983, the plaintiff applied for a driver's license, but it was refused because he declined, on religious grounds, to submit to a photograph.

Plaintiff had moved to Colorado in 1982 from California, where he had obtained, and apparently had used, a driver's license with a photograph. When he moved to Colorado he joined a religious group called the Assembly of YHWHHOSHUA, hereafter referred to as the Assembly. He now resides approximately ten miles east of Pueblo, Colorado, and works as a self-employed house painter in and around Pueblo.

The Assembly to which the plaintiff belongs has been in existence for over fifty years and has operated in Colorado for about twenty years. There are about sixty members in Colorado. Members believe that YHWHHOSHUA is God and that the savior came in his name.

Plaintiff testified that members of the Assembly "live a very simple life" adhering strictly to literal interpretation of the Bible. Members of the Assembly do not use drugs or alcohol. They follow a strict work ethic that forbids their accepting public welfare or participating in the Social Security system.

Upon joining the Assembly, the plaintiff threw away his California driver's license

---

1. Plaintiff earlier claimed that the photo requirement also unconstitutionally burdens his right to travel, but he apparently has abandoned that claim, and this opinion does not address it.

and his photo albums. He has in his home no photographs, television, radio, newspapers, magazines or pictures of any kind.

The plaintiff's religious beliefs are founded primarily upon the Old Testament prohibition found in the Second Commandment: "Thou shalt not make unto thee any graven image, or any likeness of any thing that is in heaven above or that is in the earth beneath or that is in the water under the earth...." Exodus 20:4. In further support for his belief, he cites the words of Moses found in *Deuteronomy* Chapter 4, verses 15–18 and verse 23:

"15. Take ye therefore good heed unto yourselves; for ye saw no manner of similitude on the day that the Lord spake unto you in Horeb out of the midst of the fire:

16. Lest ye corrupt yourselves, and make you a graven image, the similitude of any figure, the likeness of male or female,

17. The likeness of any beast that is on the earth, the likeness of any winged fowl that flyeth in the air,

18. The likeness of any thing that creepeth on the ground, the likeness of any fish that is in the waters beneath the earth:

23. Take heed unto yourselves, lest ye forget the covenant of the Lord your God which he made with you, and make you a graven image, or the likeness of any thing, which the Lord thy God hath forbidden thee."

Further, the plaintiff relies on *Numbers* 33, verse 52:

"Then ye shall drive out all the inhabitants of the land from before you, and destroy all their pictures, and destroy all their molten images...."

Other members of the Assembly also adhere strictly to the rules forbidding pictures. In the separate schools they operate for their children, they use Mennonite textbooks, but first edit them by crossing out all pictures. While they shop at regular grocery stores, they cross off pictures that may appear on food cans or packages.

In his work as a self-employed house painter, the plaintiff must transport, in his pickup truck, ladders, scaffolds, a paint-sprayer, brushes, paint, drop cloths and other equipment. Thus it is impossible for him to use public transportation in his business. At least one other Assembly member works with the plaintiff, but he too has no driver's license.

Indeed, about half of the Assembly's sixty Colorado members drive motor vehicles and many, like the plaintiff, own automobiles. Because they are not licensed, they cannot obtain the insurance required by Colorado law. Occasionally they are arrested for driving without a license, and when that happens they pay the appropriate fines. The plaintiff was so charged on one occasion and paid a fine.

Plaintiff's testimony indicated no attitude of defiance for the law, but rather a desire to find a way to obey the law without violating his religious scruples. There is no claim that the plaintiff's religious views are not sincere or deeply felt; his demeanor at trial strongly indicates that they are.

In addition to the Colorado group, there is a small Assembly of about thirty members in Goldhill, Oregon. Twice the plaintiff has hitchhiked from Colorado to Oregon to visit his co-religionists. On one trip to the East, however, he drove because of time constraints.

At trial the plaintiff called as a witness, William Neil Carpenter who testified that he has been a member of the Assembly for nine years, and works with the plaintiff daily in house painting. Carpenter stated that he has never seen the plaintiff violate any precept of his religion. Further he re-affirmed that these precepts are adhered to strictly by all members of the Assembly. Carpenter's wife and two children appeared with him in court. All the family were dressed in the distinctive garb of their Assembly, as was the plaintiff. Carpenter stated that his family has no photographs except in school books where they have been crossed through or deleted.

Defendants rely on the requirement of Colo.Rev.Stat. § 42–2–112(1) (1973) that Colorado state drivers' licenses *"shall bear thereon a photograph* of the licensee, which shall be taken and processed with equipment leased or owned by the department, a distinguishing number assigned to the licensee, the full name, date of birth, and residence address and a brief description of the licensee...."* (Emphasis added.) Driving without a valid license is a misdemeanor punishable by a fine. Colo. Rev.Stat. § 42–2–101(1)(a)(I).

While apparently not contesting that the statutory photograph requirement burdens the plaintiff's free exercise of his religion, the defendants contend that a compelling state interest in requiring that driver's license applicants be photographed justifies imposition of that burden. In *Johnson v. Motor Vehicle Division*, 197 Colo. 455, 593 P.2d 1363 (1979), the Colorado Supreme Court defined this interest as the need of police officers instantaneously to identify vehicle operators during traffic stops. In that opinion the State Supreme Court concluded that photographic identification is a central purpose for issuing drivers' licenses and that allowing exceptions to the requirements would subvert that purpose. In addition the *Johnson* opinion held that alternatives to photographs would be unworkable because, "the exigencies of law enforcement cannot brook the delay inherent in other means of identification." *Id.* at 459, 593 P.2d at 1365.[2]

According to the uncontested testimony in the instant case, all fifty states now require photographs on drivers' licenses, but apparently some states provide exemptions from the photograph requirement.

The defendants, at trial, produced testimony that while the State of Colorado issues some special forms of drivers' licenses which do not bear photographs, the applicants for those special licenses must be photographed before the license can be issued. These photographs, while not made part of the licenses issued to drivers, are placed in the applicants' files with the licensing agency.

In Colorado the usual term for a driver's license is four years, but the state issues special licenses for shorter terms in special situations. For example, when one is stopped for suspected drunk driving and refuses, or fails to pass, an alcohol intoxication test, the police officer seizes the driver's license and issues a seven day driving permit which does not bear a photograph. That driver then has seven days within which to seek a due process hearing to determine whether or not the license should be revoked. If the hearing is timely sought, the driver obtains a sixty-day temporary permit which, likewise, does not bear a photograph.

In addition, Colorado has a probationary driver's license which may be issued to those who have accumulated excess points on their regular drivers' licenses. These probationary drivers' licenses bear no photographs.

Other special term licenses are issued to those learning to drive and to youthful drivers.

When a driver is stopped while carrying one of these special drivers' licenses without a photograph, the police officer has to call in to get a detailed physical description. Moreover, these special licenses, without photographs, may easily be misused, that

---

**2.** I previously granted the defendants' motion to dismiss this case, relying on *Johnson v. Motor Vehicle Division, supra,* and the seeming absence of federal cases in point. While the appeal was pending, the Eighth Circuit decided *Quaring v. Peterson,* 728 F.2d 1121 (8th Cir. 1984), affirming Chief Judge Warren Urbom of the District of Nebraska, who had held on similar facts in an unpublished opinion, that the comparable Nebraska statute could not be enforced without violating the First Amendment.

The Tenth Circuit, in reversing my dismissal of the action and remanding for trial, broadly hinted that I should consider the Eighth Circuit opinion that had not been available when I dismissed the case. *Dennis v. Charnes,* 805 F.2d 339 (10th Cir.1984). In its last term, the Supreme Court affirmed the Eighth Circuit by an equally divided court. *Jensen v. Quaring,* 472 U.S. 478, 105 S.Ct. 3492, 86 L.Ed.2d 383 (1985).

is, used by someone other than the person to whom they have been issued.

Ironically, it appears that the highest risk drivers, *i.e.* suspected drunk drivers, probationary licensees, learners, youthful drivers, and those who have already established a pattern of law breaking by accumulating more than their maximum quota of points, are issued licenses without photographs.

I find and conclude that the plaintiff's religious beliefs are sincere and occupy a meaningful place in his life. Moreover, it is clear that his beliefs are indeed religious, because they are grounded on various passages from the Bible and have support in historical and Biblical tradition. The mere fact that other religions may interpret these passages differently, *e.g.* as referring only to images, statutes or pictures worshipped in idolatry, does not render less weighty the plaintiff's good faith belief in the Assembly's interpretation.

I further conclude that the state's refusal to issue the plaintiff a driver's license unless he agrees to be photographed imposes on the plaintiff a condition that would violate a fundamental precept of his religious belief.

On the other hand, I conclude that the defendants have established a legitimate public interest in requiring photographs on drivers' licenses to expedite and facilitate identification at accident scenes or when vehicles are stopped by police officers. The requirement of drivers' license photographs clearly serves a public safety interest, by providing an accurate, prompt means of identifying motorists. Prompt identification may, at least in some instances, enhance the safety of the officer making a traffic stop.

When this case was previously before me on the defendants' motion to dismiss, I concluded that the state's compelling interest outweighed the plaintiff's right of free exercise under the circumstances, and dismissed the complaint. The plaintiff appealed that order and the Court of Appeals remanded the case for trial, observing that "plaintiff asserts that certain types of re-

strictive drivers' licenses are issued without photographs. If this is true, and we have no way of checking it, then it would allow them to undercut the state interest found to be compelling in *Johnson.*" *Dennis v. Charnes*, 805 F.2d 339 (10th Cir.1984). (Referring to the Colorado case of *Johnson v. Motor Vehicle Division*, 197 Colo. 455, 593 P.2d 1363 (1979).

In reaching its decision, the Tenth Circuit Court of Appeals noted that in *Quaring v. Peterson*, 728 F.2d 1121 (8th Cir.1984), the Eighth Circuit had ruled in a similar situation that the plaintiff's First Amendment rights were violated by a Nebraska statute that required all applicants for drivers' licenses to be photographed.

The issue before me is whether the Free Exercise Clause of the First Amendment requires the state to accommodate by providing an exemption or alternative form of motor vehicle driver's license to one whose good faith religious belief forbids his submitting to the usual requirement that drivers be photographed before a license issues.

The district court decision in *Quaring v. Peterson*, No. CV 82-L-346 (D.Neb. Oct. 15, 1982) appears to be indistinguishable. There the trial judge, Chief Judge Warren K. Urbom, ordered Nebraska licensing officials to issue a driver's license. He concluded that the photograph requirement, as applied to Ms. Quaring, violated her right to free exercise of her religion as guaranteed by the First Amendment. The Nebraska officials appealed and the Eighth Circuit affirmed the injunction by a 2–1 vote.

On appeal, Circuit Judge Bright's carefully researched and well reasoned opinion concluded:

"Clearly, a burden upon Quaring's free exercise of her religion exists in this case. The state refuses to issue Quaring a driver's license unless she agrees to allow her photograph to appear on the license, a condition that would violate a fundamental precept of her religion.

Moreover, in refusing to issue Quaring a driver's license, the state withholds from her an important benefit. Quaring needs to drive a car for numerous daily activities, which include managing a herd of dairy and beef cattle, helping her husband manage a thousand-acre farming and livestock operation, and working as bookkeeper in a community ten miles from home. By requiring Quaring to comply with the photograph requirement, the state places an unmistakable burden upon her exercise of her religious beliefs.

The burden on Quaring is indistinguishable from the burden placed upon a Sabbatarian by the state in *Sherbert v. Verner*, [374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)], *supra*. In that case, the Supreme Court held that in denying unemployment benefits to a member of the Seventh-Day Adventist Church who refused to work on Saturdays, the Sabbath of her faith, the state violated her right to the free exercise of religion. 374 U.S. at 402, 83 S.Ct. at 1792. Assessing the burden of the denial of benefits on the Sabbatarian's exercise of her religion, the Court commented,

> The [denial] forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion [not working on Saturdays] in order to accept work, on the other hand.

Id. at 404, 83 S.Ct. at 1794. Similarly, Nebraska's photograph requirement puts Quaring to the choice of following an important precept of her religion or foregoing the important privilege of driving a car." 728 F.2d at 1125.

Here, as in *Quaring*, it must be acknowledged that the mere finding that the photograph requirement burdens the exercise of religious beliefs does not, in itself, entitle the plaintiff to an exemption.

A limitation on free exercise of religion may be justified, however, only if the state demonstrates that it is the least restrictive means available to achieve a compelling state interest. Thus the inquiry becomes whether the state's interest in denying the exemption is so substantial that allowing the free exercise of religion to override it would unduly interfere with fulfillment of the state's purpose. *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Wisconsin v. Yoder*, 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972).

Here the state has admitted that it issues several special forms of drivers' licenses, albeit for shorter terms, without photographs on them. The state's evidence failed to persuade me that any substantial, valuable, practical purpose is served by requiring applicants for these special forms of licenses to be photographed, then placing the photos in a file. It seems inherently unlikely that such a filed photograph would ever be of any value to a patrolman seeking hasty identification during a traffic stop many miles from the place where the photo is filed.

I agree with the Eighth Circuit's conclusion that the state's interest is not so compelling as to prohibit selective exemptions to the photograph requirement. (See *Quaring*, 728 F.2d at 1126.) In effect, Colorado has already exempted several classes of motorists from any practical application of the photograph requirement, and at least some of these exemptions have been granted to classes of drivers most likely to cause the kinds of problems the photograph requirement was intended to remedy. Surely it would not be unduly burdensome for Colorado officials to provide a simple administrative hearing to determine whether one seeking a religious exemption from the photograph requirement is in fact entitled to such an exemption. As stated in *Quaring*, "Persons seeking an exemption from the photograph requirement on religious grounds are likely to be few in number." (728 F.2d at 1127). Certainly, the Colorado officials have not demonstrated on this record that allowing a religious exemption would present adminis-

trative problems of overwhelming dimensions.

Having been once reversed for holding that the state's public safety interest outweighed the plaintiff's free exercise interest, and having since learned that the Supreme Court has affirmed the Eighth Circuit's holding in *Quaring* by an equally divided court,[3] I conclude that the path of judicious prudence coincides with my inclination that the higher values of the First Amendment should prevail over the state's concerns about bureaucratic inconvenience. If I am wrong, it shall be an interesting experience to be reversed twice, in opposite directions, in the same case.

For the above stated reasons, and for the reasons stated in *Quaring*, it is ordered that judgment enter in favor of the plaintiff and against the defendants. It is further ordered that, if the plaintiff complies with all requirements other than the photograph requirement, the defendants shall issue him a motor vehicle driver's license within twenty days from the date this order is filed. Defendant shall pay the plaintiff's costs and reasonable attorneys' fees as provided under 42 U.S.C. § 1988.

Counsel shall meet and confer within 20 days in an effort to agree upon reasonable amounts to be assessed as costs and attorneys' fees. If they cannot agree on all items, either party may request an expedited hearing on any issue not resolved by agreement.

**3.** *Jensen v. Quaring,* —— U.S. ——, 105 S.Ct. 3492, 86 L.Ed.2d 383 (1985).