**UNITED STATES of America, Plaintiff,**

v.

**Andy SLABAUGH, Defendant.**

**Crim. No. 4–86–109.**

United States District Court,
D. Minnesota,
Fourth Division.

March 16, 1987.

Jerome G. Arnold, U.S. Atty. and James E. Lackner, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

Scott F. Tilsen, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This case involves an unusual and unique question of constitutional law. The question before the Court is whether defendant should be exempt from the photograph requirement of the United States Marshal's Service Manual, Chapter 7.2–9, on the grounds that the requirement violates the defendant's first amendment right to free exercise of religion. Defendant's motion to be exempted will be denied.

## FACTS

On September 10, 1986, defendant Andy Slabaugh was indicted by a United States grand jury and charged with bribery of a public official, a federal felony in violation of 18 U.S.C. § 201(b)(3). On the day of defendant's initial appearance, he was processed through the U.S. Marshal's office by Deputy U.S. Marshal Robert Barker. Pursuant to Chapter 7.2–9 of the United States Marshal's Service Manual, Barker is required to photograph all persons he processes who have been charged with federal felonies. Barker realized that defendant was a member of the Amish community, and recalled that the Amish do not believe in allowing themselves to be photographed. Evidentiary Hearing, February 26, 1987, Transcript at 61. Barker asked defendant if he objected to having his picture taken for religious reasons, and defendant said he did. *Id.* Barker then referred to the United States Magistrate the question of whether defendant's picture should be taken. The Magistrate passed the issue to this Court. Tr. at 62. The Court stayed the taking of defendant's picture until an evidentiary hearing could be held on the issue.

In the meantime, on November 4, 1986, defendant pled guilty to the one-count indictment charging him with bribery of a public official in violation of 18 U.S.C. § 201(b)(3). On January 21, 1987, defendant was sentenced to two years imprisonment, execution of the sentence was sus-pended, and defendant was placed on probation for a period of three years. In addition, defendant was ordered to undergo counseling at the direction of the probation office, forfeit the $500 bribe he had paid to an official of the United States Department of the Treasury, and pay the $50 mandatory special assessment required by the Crime Control Act of 1984.

On February 26, 1987, the evidentiary hearing on defendant's motion for exemption from the photograph requirement of the United States Marshal's Service was held. Defendant Slabaugh and Deputy U.S. Marshal Barker testified at the hearing.

## DISCUSSION

The free exercise clause of the first amendment prohibits the government from unduly burdening the free exercise of religion. In order to show that the U.S. Marshal's regulation at issue here unduly burdens his free exercise of religion, defendant must meet two threshold requirements. First, defendant must show that his refusal to be photographed is grounded upon a sincerely held religious belief. Second, defendant must show that the photograph requirement infringes upon his religious beliefs. *Quaring v. Peterson,* 728 F.2d 1121, 1123–25 (8th Cir.1984), *aff'd sub nom. Jensen v. Quaring,* 472 U.S. 478, 105 S.Ct. 3492, 86 L.Ed.2d 383 (per curiam by an equally divided court, Justice Powell taking no part in the decision). However, these factors in and of themselves do not automatically entitle defendant to an exemption from the photograph requirement on first amendment grounds.

■ Not all burdens upon religion violate the free exercise clause. *See United States v. Lee,* 455 U.S. 252, 257–58, 102 S.Ct. 1051, 1055–56, 71 L.Ed.2d 127 (1982); *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Reynolds v. United States,* 98 U.S. (8 Otto) 145, 25 L.Ed. 244 (1879). The state may attempt to justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest. *Lee,* 455 U.S. at 257–58, 102 S.Ct. at 1055–56; *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct.

1526, 32 L.Ed.2d 15 (1972); *Gillette v. United States*, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Thomas v. Review Board*, 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981); *Hobbie v. Unemployment Appeals Commission of Florida*, — U.S. —, 107 S.Ct. 1046, 93 L.Ed.2d — (1987); *Quaring*, 728 F.2d at 1126. In articulating the standard the state must meet, the Supreme Court and the United States Court of Appeals for the Eighth Circuit have stated that "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." *Quaring*, 728 F.2d at 1126, *quoting Yoder*, 406 U.S. at 215, 92 S.Ct. at 1533.

The nature of the balancing test between the state's interest and the burden on religion was explained more fully by the Eighth Circuit in *Quaring*. *Quaring* involved a Nebraska statute which required that certain persons have their picture taken, to be affixed to the licensee's driver's license, before the license could be issued. Quaring had a religious belief that the Second Commandment literally prohibits the taking of pictures. The United States Court of Appeals for the Eighth Circuit stated:

> In weighing the competing interests, we examine not only the substantial state interests that the photograph requirement generally serves, but also whether an exemption to the requirement would impair the state's ability to achieve its objective. *Wisconsin v. Yoder, supra,* 406 U.S. at 221, 92 S.Ct. at 1536; *see also United States v. Lee, supra,* 455 U.S. at 259, 102 S.Ct. at 1056 (court must inquire whether accommodating exercise of religion will unduly interfere with fulfillment of government interest); L. Tribe, American Constitutional Law § 14–10, at 855 (1978) (crucial issue in free exercise cases is state's interest in denying exemption, not in maintaining underlying rule or program). To prevail, the Nebraska officials must demonstrate that their refusal to exempt Quaring from the photograph requirement serves a compelling state interest.

*Quaring*, 728 F.2d at 1126 (holding that the state had not met its burden of showing that its interests outweighed Quaring's first amendment right to free exercise of her religious beliefs).

■ Thus, the Court must first determine whether or not defendant has a sincerely held religious belief which is burdened by the U.S. Marshal's photograph requirement. If so, the Court must then determine if the government's interest is so compelling as to outweigh the defendant's interest in the unburdened exercise of his religious beliefs.

### Defendant's Belief

■ Defendant bears the initial burden of showing that he has a sincerely held religious belief prohibiting the taking of his photograph. *Quaring*, 728 F.2d at 1123. In the case at bar, defendant has met that burden.

■ Defendant, who is 48 years old, testified that he is presently a member of the Amish faith; that his parents were Amish; that he was raised in the Amish faith; and that he attended Amish schools through the eighth grade. Tr. at 5–6. Defendant further testified that, as is customary among the Amish, he was baptized into the faith in his late teens, and has remained a member of that faith since then, with the exception of a short period when he did not follow the faith. Tr. at 13.

Defendant testified that the Amish believe in a literal interpretation of St. Paul's quotation in the Scriptures to "be not conformed to this world" and that this means that the Amish "... do not live the ways of the world...." Tr. at 8. Therefore defendant testified in accordance with this belief that he dresses only in plain clothes; does not own an automobile; and does not have a telephone, hot running water, flush toilets, or electric lights or appliances in his home. Tr. at 5.

Moreover, as part of his faith defendant testified he does not believe in having any photographs or paintings in his home, and

has never had his picture taken consensually. Tr. at 13–14. Defendant testified that this belief is based on a literal interpretation of the Scriptures of the Old Testament as found in the Ten Commandments. Tr. at 14. Defendant seemed unable to pinpoint where exactly in the Ten Commandments this belief comes from. However, the Second Commandment does state:

> You shall not make for yourself a graven image, or any likeness of anything that is in heaven above, or that is in the earth beneath, or that is in the water under the earth.

Exodus 20:4 (King James 1970). Defendant testified that he has no pictures on the walls of his home; that he has no photographs of his four children; and that no one has ever taken his photograph with his knowledge or consent. Tr. at 14–16.

Defendant has not always succeeded in following the Amish ways. He has a cold water pump in his home which is run by electricity, and although he has lived in this home for two and one-half years he has not disconnected the pump. Tr. at 5, 28. Further, defendant testified that he had been involved in an incident in New York involving a teenage girl.[1] Of course, in this case, he has pled guilty to and been sentenced for bribing a public official. Tr. at 18. The crime to which defendant pled guilty is a felony offense under the laws of the United States. Defendant testified that all of these things violated the Amish faith. Tr. at 18, 19; 22–24. But the failure to lead a life totally without error cannot be equated with a failure to sincerely believe in certain religious precepts.

Therefore, based on the testimony given by defendant at the evidentiary hearing, the Court concludes that although defendant has at times contravened the commands of his faith, on balance defendant has satisfied his initial burden of showing that he has a sincerely-held religious belief prohibiting the taking of his photograph.

**Government's Interest**

The Court now addresses the question of whether the government has shown a compelling interest in taking defendant's photograph.

The government's primary interest served by the U.S. Marshal's Service photograph requirement is clear: the requirement protects the public safety by aiding law enforcement agencies in the identification and apprehension of fugitives. Deputy U.S. Marshal Robert Barker testified that every person processed through a U.S. Marshal's office on a felony charge is photographed and the photographs are maintained in office files, pursuant to the regulation in question, for this reason. Tr. at 39. Barker further testified that in his three years as a deputy U.S. marshal in this district, no exceptions to the photograph requirement have been made. Tr. at 39–40.

Barker testified that when marshals attempt to find fugitives, they often enlist the aid of other law enforcement agencies, as well as the help of the public at large, bus drivers, taxi cab drivers, citizens on the street, etc. Tr. at 42. As Barker testified:

> It's very difficult to describe to someone else what another person appears like. He may appear to me to be one way. He may appear to someone else differently.

*Id.* For this reason, Barker testified, it is essential to have a photograph. In the case at bar, defendant has certain unique

---

1. That testimony was as follows:

> Q. Is it your testimony, or—let me ask you this way. Was there ever anything that happened between you and a teenage girl in the community you lived in in New York?
> ....
> Involving an improper sexual advance, or a sexual advance?
> A. I did not have to leave that town. I wasn't ordered to leave the town. I didn't want to live there because of the conditions of the country up there.

> Q. Was there an incident in that town in which you made an improper sexual advance to a teenage girl?
> A. To some circumstance.
> Q. And that also would be against your religion, would it not?
> A. Yes.
> Q. And you were Amish at that time?
> A. Yes.
> Tr. 23–24.

characteristics, such as his Amish dress, beard and hair style, and the defendant has only one arm. Defendant would not be hard to identify in a courtroom full of non-Amish people. But if defendant were to flee to other Amish communities, such as in Ohio, where he has family, his distinctive Amish dress, beard and hair style would be of little assistance in identifying him.[2] Tr. at 46–47.

2. The Court finds the following testimony of Deputy Marshal Barker to be highly persuasive in determining that there exists a compelling government interest in photographing the defendant.

Q. Not looking at the Defendant in particular, but just keeping in mind any person who may attempt to flee if they are on probation, in your opinion, how necessary is it to have a photo to apprehend that person?

. . . .

A. It is absolutely essential to have a photograph.

. . . .

Q. Would you explain to the Court why that is necessary? What it is you actually do with that photo?

A. As I stated, if we do not find the person right away, meaning if I have been dealing with this person and I know him personally, I may not need a photograph to walk up to the person and know that that's the person I'm searching for.

However, when trying to find someone and attempting to enlist the aid of other people, whether they be police officers, bus drivers, cab drivers, citizens on the street, next-door neighbors, or whatever, you need a photograph to display to those persons so that they then have an image of the person you are attempting to find.

Q. Based on your experience, is it good enough to enable you to apprehend someone if you are dealing with other law enforcement officers who have never seen the person you are trying to apprehend, to describe him, to those other police officers without a photo?

A. It's very difficult to describe to someone else what another person appears like. He may appear to me to be one way. He may appear to someone else differently. A photograph is more concrete. A person I am interviewing draws an image from that photograph, just as he draws an image from the person he sees on the street. Those two images that this person is drawing are similar. Whereas, the image I draw from observing the person may be different than the way someone else observes it to be.

Q. What about in dealing with the public, people who aren't trained in observation? How necessary is a photograph in your experience?

A. Certain characteristics of a person may not necessarily register with another person observing them. I may take note of a person's eyebrows, whereas, someone else doesn't. And if the only characteristics I am able to relate to a person I am talking to are ones that I attach importance to, then they may be of absolutely no help to the person I am interviewing.

Q. Again, keeping at a general level, are there other alternatives that you would be able to use if you did not have a photograph?

A. I can't think of any that would be as valuable as this, as the photograph.

. . . .

Tr. 41–43.

THE COURT: Are you suggesting this— there is no question that this Defendant has a distinctive appearance. Would you agree with that? He has a long beard. He wears certain types of clothes, and he certainly is distinctive from most people you see in the community. Isn't that true?

THE WITNESS: Yes.

THE COURT: Are you suggesting that should he be in the company of other Amish men who dress and have a beard as he does, that he then would not be distinctive? Is that what you are saying? That he would look much like other Amish men?

THE WITNESS: Yes.

. . . .

Q. Mr. Barker, what if he were to—how effective do you think it would be to send information to other jurisdictions where you think he may have fled without a photograph? Assuming, for the sake of this question, that he stays in an Amish community in other jurisdictions.

A. If he were to flee to an Amish community, say, for example, where he has family in Ohio, it would be extremely difficult, if not impossible, for me to describe to deputy sheriffs, police officers, or other deputy marshals, the facial characteristics of this man. I could describe his height and his weight, the fact that he has a beard and graying hair. But other than that, I can be of little help to those other deputies.

Q. What about to the public?

A. There again, if the public contact he is having is with other Amish men, he is just one more Amish man, without a photograph.

Q. What about the fact he's got one arm? What does that do to your need to have a photograph?

A. It's a good identifier if my people, or deputy sheriffs, or whatever, were to encounter this man outside working in a field with their shirts off. But it's of little or no use if these same men have long shirts or jackets on. When I first encountered Mr. Slabaugh at his preliminary hearing—

. . . .

When I first encountered Mr. Slabaugh, it was in a preliminary hearing. I did not notice that he was lacking his left arm until he

Moreover, if defendant were to shave his beard or cut his hair or change his style of dress to disguise himself, he would, of course, not have his present distinctive appearance. With the aid of a photograph a police artist could draw sketches of how defendant may appear after such a change. Without a photograph, a police artist would have to rely on verbal descriptions and general record identifiers (such as height, weight, etc.) to recreate defendant's possible likeness. Barker testified that he has "seen sketches of people who are apprehended, and to me, that sketch does not look like that person all that much." Tr. at 50.

The interest in protecting the public safety is clearly substantial both in general and for this defendant in particular. In the case at bar, defendant is a convicted felon who has violated federal law by bribing a public official. Defendant has been sentenced to probation, which means he is free to move in the community at large with certain restrictions. Defendant confirmed that on a prior occasion he made an improper sexual advance to a teenager. Tr. at 22–24. While the Court will not engage in guessing games about defendant's future activities, the Court does believe that there is a compelling public safety interest in having a photograph of defendant to aid in his identification and apprehension should any future events occur involving the defendant which might require his apprehension.

There are also other significant public interests which the photograph requirement fulfills. The United States Probation Office has an interest in easily and efficiently doing its duty, which is to supervise individuals on probation. Without a photograph, the probation office's task is greatly hindered. Additionally, the court system itself cannot realistically be expected to adjudicate every claim of religious exemption from the photograph requirement that a defendant may raise. The Court sees no reason to create greater administrative burdens on the U.S. Marshal's office, the courts or those who are given the responsibility to oversee the administration of a convict's sentence, be it incarceration or probation.

■ Nor can the Court ignore the unique factual setting in which this issue arises. Defendant has pled guilty to a felony offense under the laws of the United States. It is well accepted that those convicted of felony offenses are subject to some diminution of their constitutional liberties. *See, e.g., Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). A probationer may be required under certain circumstances to forego the exercise of what otherwise would be inalienable first amendment rights. *United States v. Tonry,* 605 F.2d 144 (5th Cir.1979) (defendant on probation required to forego political activity and candidacy for office); *United States v. Stine,* 646 F.2d 839, 843 (3d Cir. 1981) (first amendment claim that terms of probation requiring psychological counseling interferes with mental process rejected). Under the unique circumstances of the case at bar, the legitimate needs of law enforcement officials and the purposes sought to be served by probation fully justify a limited intrusion on defendant's constitutional rights, particularly given the fact that defendant now stands before the Court, not as an unrestricted citizen, but

---

was in our office and I began processing him. That's when I noticed. And I, at one point during the personal history, inquired as to how much of his arm was missing and so on.

Q. Why didn't you notice it before?

A. He happens to wear his coat sleeve, or shirt sleeve down. And standing before the Court, his arms were to their sides, to his side, rather. And I just didn't see that there was not a hand extending below the sleeve cuff. And both arms appeared to be the same. They were both extended straight down.

. . . .

Tr. 46–48.

Q. What is your opinion about your going to a police artist yourself and describing what Mr. Slabaugh looks like? Would that be effective?

A. If I were to describe to a police artist my impression of how Mr. Slabaugh appears to me, that sketch will eventually, hopefully, look like what I think Mr. Slabaugh looks like. I doubt it would be as valuable to another person looking at that same sketch. I have seen sketches of people who are apprehended, and to me, that sketch does not look like that person all that much.

Tr. 50.

rather as one who has pled guilty to a felony offense.[3]

■ Therefore, the Court finds that the government has met its burden of showing compelling public interests in the U.S. Marshal's photograph regulation. First and foremost, the photograph serves to protect the public safety by aiding law enforcement agencies in apprehending fugitives. Additionally, the photograph requirement serves the public interest in the efficient and orderly administration of justice by the U.S. Marshals, the courts, and those who are given the task of supervising convicted felons, such as the probation office in the case before the Court.

**Balancing the Interests**

As the Eighth Circuit stated in *Quaring:* In weighing the competing interests, we examine not only the substantial [government] interests that the photograph requirement generally serves, but also whether an exemption to the requirement would impair the [government's] ability to achieve its objective. *Wisconsin v. Yoder, supra,* 406 U.S. at 221, 92 S.Ct. at 1536; *see also United States v. Lee, supra,* 455 U.S. at 259, 102 S.Ct. at 1056 (court must inquire whether accommodating exercise of religion will unduly interfere with fulfillment of government interest); L. Tribe, American Constitutional Law § 14–10, at 855 (1978) (crucial issue in free exercise cases is state's interest in denying exemption, not in maintaining underlying rule or program). To prevail, [the government] must demonstrate that [its] refusal to exempt [the defendant] from the photograph requirement serves a compelling [government] interest.

*Quaring,* 728 F.2d at 1126.

As stated previously, defendant is a convicted felon. He pled guilty to bribing a public official in violation of federal law, 18 U.S.C. § 201(b)(3). His sentence of probation places him in the community at large. These facts in themselves, based upon the record in the case, support the government's refusal to exempt defendant from the photograph requirement and demonstrate a compelling interest in ensuring the public safety by enabling law enforcement agencies to swiftly and easily identify and apprehend defendant if the need should arise. While the Court has great respect for the defendant's religious beliefs, the governmental interest in public safety is of the highest order, and overrides the defendant's legitimate claim to the free exercise of his religion. An exemption from the photograph requirement would impair the government's ability to achieve its objective in ensuring the public safety. *See Yoder,* 406 U.S. at 221, 92 S.Ct. at 1536; *Lee,* 455 U.S. at 252, 102 S.Ct. at 1052–53; *Quaring,* 728 F.2d at 1126.

Accordingly, based on the foregoing, and upon all files, records and proceedings herein,

IT IS ORDERED that defendant's motion for exemption from the U.S. Marshal's Service photograph requirement is denied.

---

3. Quite obviously, were defendant not a convicted felon, the balance would swing more weightily in his favor. The government urges the Court to adopt the three-part test set forth in *United States v. Pierce,* 561 F.2d 735, 739 (9th Cir.1977), wherein a condition of probation is justified if it bears a reasonable relationship to the purposes of the probation act. In gauging whether a reasonable relationship is present, the Court considers the purposes sought to be served by probation, the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers, and the legitimate needs of law enforcement. The Court sees no reason to pass on the applicability of this test, inasmuch as even under the more rigorous compelling interest test set forth above the government has met its burden.