**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel T. SLAUGHTER,**
**Defendant–Appellant.**

No. 89–1203.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 29, 1989.

Decided April 25, 1990.

Eric J. Klumb, Milwaukee, Wis., for Plaintiff–Appellee.

Richard S. Kling, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and WOOD, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

BAUER, Chief Judge.

Daniel Slaughter pled guilty to one count of tax evasion and one count of dealing in firearms without a license, for which he was sentenced to two consecutive five-year terms. At Slaughter's sentencing hearing, the district court also held him in civil contempt for refusing to obey the court's earlier order to submit to "processing," and committed him to custody until he complied with that order. In this appeal, Slaughter seeks resentencing, claiming that the dis-

trict court's conduct of the sentencing hearing violated Fed.R.Crim.P. 32(c)(3)(D) and that his counsel during the sentencing hearing did not afford him effective assistance. Slaughter also claims that the district court's contempt order was improper, and should therefore be vacated. We affirm Slaughter's sentence, but vacate the district court's contempt order and remand for further proceedings.

## I.

On August 31, 1988, a federal grand jury in Wisconsin returned a forty-two count indictment charging the defendant Dan Slaughter with various firearms and tax evasion offenses. The U.S. Attorney's office subsequently filed a one count information alleging that Slaughter purchased and distributed firearms without a license in violation of 18 U.S.C. § 922(a)(1) and 924(a). On December 6, 1988, Slaughter appeared before Judge Terence T. Evans of the United States District Court for the Eastern District of Wisconsin and, pursuant to a plea agreement, pled guilty to the last count of the multi-count indictment (failure to file his 1984 income tax return in violation of 26 U.S.C. § 7201) and to the firearms charge contained in the information. After conducting a detailed Rule 11 colloquy, *see* Fed.R.Crim.P. 11, and hearing the government's offer of proof, Judge Evans accepted Slaughter's pleas, ordered a presentence investigation and report, and continued the case to January 24, 1989, for sentencing.

Complicating the proceedings before Judge Evans was the fact that, two years earlier, Slaughter had been tried and convicted of seven drug-related charges in federal court in Chicago. *See United States v. Rollins,* 862 F.2d 1282 (7th Cir.1988) ("the Chicago convictions"). Judge James Holderman of the United States District Court for the Northern District of Illinois sentenced Slaughter on the Chicago convic-

tions to several concurrent terms of imprisonment, the longest of which was ten years, and imposed a fine, a period of probation, and a "special parole term for life." *Id.* at 1286–87. At the time of the proceedings before Judge Evans, the Chicago convictions had been affirmed by this court, but Slaughter's case had been remanded for resentencing. *Id.* at 1299.

That the Chicago convictions would affect the Wisconsin proceedings became apparent at the December 6th hearing. In setting Slaughter's case for sentencing, Judge Evans expressly took note of the Chicago convictions, and specifically of the fact that a presentence investigation and report had already been completed in that case ("the Chicago presentence report"). Judge Evans suggested that all that was required was "just some updating of the prior presentence that was prepared in the Northern District of Illinois," and therefore set an early sentencing date. Also, as suggested above, Slaughter was already in custody on the Chicago convictions at the time of his Wisconsin indictment. This fact motivated the counsel for the government to request, at the close of the December 6th hearing, that agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") be permitted to "process" Slaughter (i.e. obtain fingerprints, handwriting exemplars and a photograph). Counsel explained that this was necessary because Slaughter was never arrested and thus never "processed" by ATF. Judge Evans responded, "Okay. So ordered."

As foreshadowed by Judge Evans' comments at the December 6th hearing, the presentence report submitted at the January 24th sentencing hearing was nothing more than the Chicago presentence report with six pages of new material.[1] Slaughter objected to the inclusion of the Chicago presentence report, both before the sentencing hearing via a letter to Judge Evans and at the start of the hearing, claiming

---

**1.** Adding yet another layer of overlap between the Chicago and Wisconsin proceedings, counsel for the government submitted to Judge Evans, before the January 24th sentencing hearing, the transcript from the Chicago sentencing hearing. He explained to Judge Evans and to this court

that the purpose for doing so was to inform Judge Evans of the extent to which Judge Holderman considered some of the conduct at issue in the Wisconsin prosecution when he [Judge Holderman] sentenced Slaughter on the Chicago convictions.

that the report contained inaccuracies. After verifying that Slaughter did not intend to withdraw his guilty pleas, Judge Evans stated, "[I]f you can tell me what in this presentence [report] you object to I will probably not consider it.... So you tell me what you object to in this presentence report. You and Mr. Kulkoski [Slaughter's counsel] can do this together or you can do it yourself." Transcript of Sentencing Proceedings ("Sent.Tr.") at 12–13.

After calling a recess to give Slaughter an opportunity to review the presentence report, Judge Evans reconvened the sentencing hearing, at which time Slaughter himself began listing his challenges to the assertions in the presentence report concerning his prior criminal record (such inaccuracies being of substantial concern to Slaughter because the nature and disposition of his prior criminal charges would affect his parole eligibility). *Id.* at 14–21. Slaughter also challenged several of the government's allegations regarding sources of unreported income involved in the tax evasion charge at issue, and told the court that he wanted to call witnesses to bolster his challenges. *Id.* at 21–23. Although Judge Evans did not grant this request, he did take extensive, sworn testimony from Slaughter. *Id.* at 23–55. At the close of this lengthy examination, Judge Evans afforded the counsel for the government, Slaughter's counsel and Slaughter himself an opportunity to make a final statement regarding sentencing. All three took advantage of this opportunity. *Id.* at 55–63.

After all such testimony and statements were in, Judge Evans ruled as follows:

Now, the more I have gotten to know Mr. Slaughter the more I wish this case would have been tried because I'm reasonably confident that, had it been, Mr. Slaughter would stand convicted of many, many more counts than are present here. And I underscore that. Because even ... accepting all of the objections that Mr. Slaughter would make to the presentence report, the sentence I intend to impose here would not be adequate. In other words, accepting everything he says is true today, I would

if I had it available to me give a more severe sentence than I intend to impose.

*Id.* at 63. As to Slaughter's challenges to the statements in the report regarding the disposition of his prior criminal cases, Judge Evans stated, "I take no position on how the Bureau of Prisons wants to consider that." He added:

In so far as the challenges to the presentence report, this would be more important if I had a lot more [prison] time to give to Mr. Slaughter than is available in this case. I think the record is accurate enough for Rule 32 purposes because ..., quite frankly, I don't believe much of anything that Mr. Slaughter has to say.

*Id.* at 64.

Judge Evans then sentenced Slaughter to two consecutive five-year terms, both to run consecutively to the sentence imposed by Judge Holderman for the Chicago convictions. After sentence was imposed, counsel for the government informed the court that Slaughter had so far refused to submit to the "processing" ordered by the court at the December 6th hearing, and asked the court to renew its order. Judge Evans did so.

Later that same day, the parties again appeared before Judge Evans. Counsel for the government told the court that Slaughter had again refused to be processed, and requested that the court hold him in civil contempt unless and until he did so. After giving Slaughter and his counsel an opportunity to respond to this request, Judge Evans found Slaughter in contempt for failing to comply with his earlier directives, and ordered Slaughter to be committed on the contempt citation until he agreed to be processed, with no jail time served on the contempt order to be credited toward his sentences. Judge Evans filed a written civil contempt order the following day memorializing this ruling.

Slaughter filed a timely notice of appeal, raising the challenges discussed below.

## II.

Slaughter's primary challenge on appeal is that Judge Evans did not comply

with Fed.R.Crim.P. 32 ("Rule 32") in conducting the sentencing hearing, and therefore resentencing is required. The pertinent portion of Rule 32 provides that, when the defendant alleges factual inaccuracies in the presentence report, "the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons." Fed.R.Crim.P. 32(c)(3)(D). As a defendant charging that this rule has been violated, Slaughter has the burden of showing that he made allegations of inaccuracy before the sentencing court and that the court failed to make findings regarding the disputed matters or a determination that these matters would not be considered in sentencing. *United States v. Eschweiler*, 782 F.2d 1385, 1389 (7th Cir.1986).

 To meet this burden, Slaughter points to the laundry list of inaccuracies in the presentence report that he alleged before Judge Evans: approximately six regarding his prior criminal history and approximately four regarding the tax evasion charge. He argues that Judge Evans failed to respond to or make the requisite finding or determination concerning these challenges, claiming that "[a]lthough Judge Evans appropriately allowed the defendant to state his objections to the presentence report, [he] simply left it at that." From our review of the record, however, we conclude that Judge Evans made the requisite findings and/or determinations.

Slaughter is correct in asserting that Judge Evans did not make an explicit, record finding or determination as to each of Slaughter's challenges at the time each

was voiced. We note, however, that he did dispose of quite a few of them on the spot. *See, e.g.,* Sent.Tr. at 21, 27, 52 & 55. More to the point, he indicated clearly at several junctures that he would dispose of the remainder of the challenges at the close of the hearing. *See, e.g., id.* at 39, 52 & 55. In that ultimate disposition, quoted at length above, Judge Evans stated that even were he to accept Slaughter's version on every disputed point, he would still impose the same sentence—namely, the maximum allowable given the few charges to which Slaughter pleaded. *Id.* at 63–64. *See also id.* at 18 (regarding Slaughter's challenges to the information on his priors, "[t]he issue is whether I'm going to consider [them] or not. If I don't think ... any of this is important enough to consider, that ends the matter."). The unmistakable import of these statements is that the disputed factual allegations mattered not to Judge Evans when he determined Slaughter's sentence. Thus, Judge Evans made the on-the-record determination required by Rule 32(c)(3)(D)(ii), and resentencing is unnecessary. *See Eschweiler*, 782 F.2d at 1390 ("[R]equiring resentencing when the record is clear that the sentencing judge did not rely on a contested matter does not further the purpose of Rule 32(c)(3)(D)."). *See also United States v. Ryan*, 810 F.2d 650, 656–57 (7th Cir.1987) (same). We note further that, even were we to find that Judge Evans' oral ruling did not meet the requirements of Rule 32, this error would be harmless given Slaughter's failure to prove that the sentencing hearing failed to serve the purposes underlying the rule. *See United States v. Montoya*, 891 F.2d 1273, 1279–81 (7th Cir.1989); *Kramer v. United States*, 798 F.2d 192, 194–95 (7th Cir.1986).[2]

 Slaughter's second challenge is to the assistance he received from his former counsel, Glen Kulkoski. Slaughter claims that Kulkoski's representation was consti-

---

**2.** In his brief, Slaughter also appears to allege that Judge Evans failed to comply with Rule 32's requirement that the findings regarding disputed matters be reduced to writing and attached to the presentence report. The record reflects, however, that the U.S. Attorney's office has sent a copy of the sentencing transcript to the Probation Office with instructions to attach it to the presentence report. This is a common and acceptable method of discharging this ministerial requirement of Rule 32. *See United States v. Moran*, 845 F.2d 135, 139 (7th Cir. 1988).

tutionally deficient in the following respects: 1) when negotiating the plea agreement, Kulkoski failed to vigorously push for the removal of a paragraph that allowed the U.S. Attorney's office to release the agreement to the Civil Division of the IRS, and it was only at Slaughter's insistence that this paragraph was objected to and removed at the sentencing hearing; 2) Kulkoski failed to provide Slaughter with a copy of the presentence report before the sentencing hearing, necessitating a recess to enable Slaughter to review it; 3) at the sentencing hearing, Slaughter listed and argued the alleged inaccuracies on his own; 4) Kulkoski failed to object to or discuss with Slaughter "new information" presented by the government in its offer of proof but not contained in the indictment or in the plea agreement; 5) Kulkoski's statements at the close of the sentencing hearing were "weak and unsupportive;" and 6) Kulkoski failed to object to the initial processing order, stating "[t]hat's an administrative function that I don't believe we are at liberty to object to," Sent.Tr. at 66, and failed later to object to the resulting contempt citation, stating "I'm not really aware of any basis where an objection could be imposed. This is not a decision which is upon discussion and information with my client, and perhaps he can best address it." *Id.* at 67. Slaughter also points to several additional transcript entries which he claims establish that "the attorney-client relationship had broken down" and that Kulkoski's assistance was ineffective. Those entries include Judge Evans' discussion of a letter he received from Slaughter expressing dissatisfaction with Kulkoski and of a motion to withdraw by Kulkoski; Slaughter's request, after the entry of the civil contempt order, for the appointment of counsel other than Kulkoski to contest that order, which request was denied; Slaughter's statement at the close of the hearing that "I'm not represented by counsel," Sent.Tr. at 69; and especially the following statement by Kulkoski in the course of Slaughter's testimony as to the disputed source(s) of unreported income:

> In essence, Mr. Slaughter is here proceeding essentially without counsel in the context that due to matters of our past relationship and matters of our underlying knowledge of attorney-client relationship I'm not really able to assist him. I point that out so that the record would not indicate that I'm actively assisting him in how he should be answering these questions.... He just asked me for advice and, frankly, I don't know how to handle it.

Sent.Tr. at 33.[3]

We review a challenge to the effectiveness of assistance of counsel under the now familiar two-part standard first enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1983). As we recently summarized, "The burden upon a defendant pressing such a claim is a 'heavy one.' The defendant must affirmatively establish that a counsel's performance was both constitutionally deficient and that the deficiency prejudiced the outcome of the trial." *Harris v. Reed,* 894 F.2d 871, 877 (7th Cir.1990) (quoting *Sullivan v. Fairman,* 819 F.2d 1382, 1390 (7th Cir.1987)). *See also Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986) (defendant bears burden of proving both incompetence and prejudice). The defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, and the failure to establish either one of the two components is fatal to the claim.

In this case, Slaughter has failed to establish "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068, and thus we need not examine whether Kulkoski's performance was

---

**3.** Judge Evans' response to this statement was as follows:

> Well, you are his attorney of record in this case. You haven't been discharged of any

responsibility that you have and you're to act as his lawyer at this proceeding. If he doesn't want to accept your advice that's up to him. *Id.* at 33.

deficient. *See United States v. Fakhoury*, 819 F.2d 1415, 1424 (7th Cir.1987) ("[W]e need not assess the performance component of the *Strickland* analysis because the appellant clearly has not satisfied his burden of showing prejudice."), *cert. denied*, 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). Due to the plea agreement negotiated at least in part by Kulkoski, Slaughter came into the sentencing hearing with a very limited sentencing exposure. At the sentencing hearing, Slaughter was given, and chose to take advantage of, an opportunity to present on his own behalf extensive challenges to the presentence report. Slaughter now charges that his efforts could have been more effective if Kulkoski would have interposed objections at various points, presented contradictory evidence, and etc. Assuming that such assistance would have been welcomed, it certainly would not have affected the ultimate sentence. As we state above, the record is clear that the challenged portions of the presentence report had no bearing on the sentence imposed. Indeed, as the passages quoted above indicate, an even more lengthy and contentious dispute as to alleged inaccuracies in the report could only have had a negative effect on Judge Evans, who became increasingly convinced, the more he heard from Slaughter, that Slaughter was a liar and that the sentence he intended to impose was inadequate.[4] Thus, the record reveals that Judge Evans would have imposed the maximum sentence on the two charges to which Slaughter pleaded regardless of the quality of Kulkoski's assistance. Given this lack of prejudice, Slaughter's ineffective assistance claim is meritless.

Slaughter's third challenge, however, contains merit. Slaughter claims that the order holding him in civil contempt and committing him to custody for failure to "submit to processing" should be vacated for two reasons: 1) Judge Evans lacked the authority to enter the order when he did (after sentence was imposed) because the proceedings had been effectively terminated and nothing was pending before the court, and 2) the government made no showing of need and/or authority for ATF's demand for processing. Although we find the first argument meritless, we grant the requested relief based on the second.

There are two types of civil contempt orders, "coercive" and "compensatory." As their labels imply, the former is intended to force the contemner to obey a court order, and the latter is intended to afford some party compensation for contemner's failure to do so. *See United States v. Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *Commodity Futures Trading Commission v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir.1981). The distinction is important because coercive orders, unlike compensatory orders, ordinarily abate when the proceedings out of which they arise are terminated, because "the need for getting a party to act in the underlying litigation ends when the litigation ends." *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 400 (7th Cir.1987). *See, e.g., Shillitani v. United States*, 384 U.S. 364, 370–72, 86 S.Ct. 1531, 1535–36, 16 L.Ed.2d 622 (1966) (civil contempt orders imposed for refusal to testify before a grand jury terminate when the grand jury is discharged). Such abatement does not occur, however, when the need or purpose for the coercive contempt order survives the underlying proceeding. *See, e.g., Petroleos*, 826 F.2d at 400–01 (coercive portion of civil contempt order imposed for misconduct during the discovery phase of a criminal prosecution was not mooted by the termination of the prosecution because the wrongfully

---

**4.** Consider, in addition, the following comments made by Judge Evans immediately before he imposed sentence:

I've been a judge for 15 years, seen a lot of defendants come and go through my courtrooms, Mr. Slaughter, and you're right up there at the top of the list of people that I have become thoroughly convinced are schemers, conyvers and liars and everything else. A career criminal, dealing in those firearms, got an answer for everything, no matter what it is you can twist it around.... I do not believe you. I do believe that you show no remorse, no willingness to accept what you've done and to try to live a law abiding life.

Sent.Tr. at 64–65.

withheld information was relevant to a closely related, on-going civil proceeding).

■ In this case, the civil contempt order issued against Slaughter was undoubtedly coercive, as it was specifically intended to force him to obey the court's order to submit to processing. Thus, had the order been made for evidentiary, trial-related or other purposes tied to the pendency of the proceeding, the court's power to enter a contempt and commitment order would have terminated when the proceedings terminated (after the imposition of sentence), and any order entered thereafter would be invalid. However, as Judge Evans' written contempt order states, processing was requested and ordered in this case for ATF's general "law enforcement purposes." Such purposes, if valid, survive the termination of the underlying proceedings. *See United States v. Slabaugh*, 655 F.Supp. 462 (D.Minn.1987), *aff'd.*, 852 F.2d 1081 (8th Cir.1988) (U.S. Marshall's Service entitled to photograph despite fact that defendant had already pleaded guilty and been sentenced, and despite defendant's religious objections, because of compelling governmental interests in law enforcement and public safety).

■ Although the invocation of general "law enforcement purposes" was sufficient to save the contempt order based thereon from expiring after the imposition of sentence, it was insufficient standing alone to justify the ultimate use of a coercive contempt and commitment order. As counsel for the government conceded at oral argument, no law or regulation was cited to Judge Evans that grants ATF the duty or authority to force all persons charged with or convicted of a weapons offense to provide fingerprints, handwriting samples and photographs. *Compare*

*Slabaugh*, 852 F.2d at 1082 (provision of United States Marshall's Service Manual requires the Service to photograph all persons charged with federal felonies). In fact, the record reveals no proffered reasons or need for this information that would justify the imposition of a coercive contempt and commitment order. (The mere statement that ATF couldn't process Slaughter before because he was already in custody when the indictment was returned is insufficient.)

Because no reasons were proffered, the court could not and did not make the findings of fact which form the necessary predicate for a civil contempt order. *See, e.g., Petroleos*, 826 F.2d at 397, 401. The order is therefore vacated and the issue remanded. On remand, the government must come forward and present record evidence as to ATF's need for this information, the unavailability of the information, and etc. Should the court find the proffered reasons sufficient and therefore re-issue its order to submit to processing, and should Slaughter persist in his refusal to obey, a coercive civil contempt order would then lie. In addition, Slaughter should receive full credit toward his federal sentences for all time served on the vacated contempt order.[5]

### III.

No doubt, Daniel Slaughter does not like his sentence. By voluntarily pleading guilty to the two charges, however, he bargained for it; indeed, Judge Evans' comments indicate that Slaughter got quite a bargain. Slaughter's attempt here to disavow the results of his bargain rings hollow. Judge Evans' oral rulings satisfy the mandatory requirements of Rule 32, and, as it could not have positively affected the ulti-

---

**5.** Slaughter also argues, without reference to any authority, that we should remand this case to a judge other than Judge Evans due to his "demonstrated prejudice" and "inability to be fair and impartial." Although the record clearly reveals that Judge Evans has a negative opinion of Slaughter and his honesty, the record comes far from establishing, (and Slaughter presents no argument that it does establish), the kind of personal bias or prejudice required to overcome the presumption of impartiality and serve as

grounds for a motion for recusal, *see United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986); a motion which must first be brought before the district court, in any event. *Id.* at 1199, 1202–03. Nor does Slaughter come close to establishing grounds sufficient to convince us to invoke Circuit Rule 36. Slaughter's groundless, vitriolic attack on Judge Evans' ability to carry out his sworn duty deserves even less attention than we give it here.

mate sentence, the assistance provided by Slaughter's counsel at the sentencing hearing was not constitutionally deficient. All aspects of Slaughter's sentence are AFFIRMED. Not so the contempt and commitment order, however, as a proper predicate was not laid. Therefore, the contempt order is VACATED and this issue is REMANDED for further proceedings consistent with this opinion.