UNITED STATES of America,
Plaintiff–Appellee,

v.

Kenneth J. BALDWIN, Defendant–
Appellant.

No. 89–2173.

United States Court of Appeals,
Seventh Circuit.

Argued June 3, 1991.

Decided Feb. 7, 1992.

R. Jeffrey Wagner, Asst. U.S. Atty. (argued), Milwaukee, Wis., for plaintiff-appellee.

Richard L. Zaffiro (argued), West Allis, Wis., for defendant-appellant.

Before CUDAHY, EASTERBROOK and KANNE, Circuit Judges.

KANNE, Circuit Judge.

On January 10, 1989, a federal grand jury returned a two count indictment against appellant Kenneth J. Baldwin charging him with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (count one) and assault of a federal officer with a dangerous weapon in violation of 18 U.S.C. § 111 (count two). On March 6, 1989, pursuant to a written plea agreement, Baldwin pleaded guilty to the possession with intent to distribute count and the government agreed to dismiss count two. On May 26, 1989, the district court sentenced Baldwin to 92 months imprisonment. This appeal followed.

On November 29, 1988, at approximately 12:00 p.m., a confidential informant placed a telephone call to Baldwin. In that call the confidential informant offered, together with "his friend," to purchase four ounces of cocaine. Baldwin agreed to sell cocaine to the informant. The informant then agreed to give Baldwin a ride to a nearby McDonald's restaurant in Milwaukee, Wisconsin to make the exchange. At approximately 2:00 p.m., the confidential informant and "his friend," Drug Enforcement Agent Ray Melick, picked up Baldwin. On the way to the restaurant, Baldwin told them that his "source" had a large supply of cocaine available and that Agent Melick could purchase it at a future time.

Upon arriving at McDonald's, Baldwin placed a telephone call, arranging to have the cocaine delivered to him. Shortly thereafter, a blue van drove into the parking lot and Baldwin met with the driver. When Baldwin returned, he offered to exchange four ounces of cocaine with Agent Melick for $3,100. After the agent showed Baldwin the money, Baldwin, the van driver, and Agent Melick completed the exchange. Baldwin promptly reentered the van, which then left the restaurant parking lot.

Between November 29, 1988 and January 5, 1989, Agent Melick met with Baldwin on several occasions to negotiate the purchase of a kilogram of cocaine. On January 4, 1989, Baldwin agreed to sell Agent Melick a kilogram of cocaine on the following day in exchange for $20,000. Baldwin told the agent that the exchange would take place in the area of 38th and Roosevelt Drive in Milwaukee. On January 5, 1989, Agent Melick drove Baldwin to that location. When they arrived, Baldwin left the car, and indicated that he was going to meet with the supplier. Baldwin returned a short time later and, in an attempt to steal the agent's money, attacked him with a meat cleaver. During the ensuing struggle, Agent Melick disarmed Baldwin and fired a shot at him. The bullet merely pierced Baldwin's jacket and he escaped. Agent Melick was uninjured.

The next day, Baldwin was arrested at his residence. After receiving the *Miranda* warnings, Baldwin told Agent Melick that he "did not mean it personally" and that he merely "wanted to put the knife to [Melick's] neck to take his money."

The district judge sentenced Baldwin based upon information contained in the pre-sentence report prepared by the United States Probation Office. The presentence report recommended that Baldwin's base offense level be set at 26. To arrive at that result, the probation officer added the four ounces of cocaine which Baldwin actually delivered to Special Agent Melick on November 29, 1988 to the kilogram which he offered to deliver on January 5, 1989. Baldwin also received a two-level enhancement based on his use of a dangerous weapon pursuant to Guideline § 2D1.1(b)(1). *See* United States Sentencing Commission, *Guidelines Manual,* (1991). For his acceptance of responsibility, under Guideline § 3E1.1, Baldwin's offense level was decreased by two levels. The probation officer further found that Baldwin's criminal history category was III; thus, Baldwin's sentencing guideline range was found to be between 78 and 97 months imprisonment. At Baldwin's sentencing hearing, the district court adopted the presentence report and sentenced him to 92 months imprisonment.

Baldwin argues that this case should be remanded for resentencing because he received ineffective assistance of counsel at his sentencing hearing. He argues that his trial counsel, Michael Chernin, failed to argue and present evidence that Baldwin should not be held accountable under the Sentencing Guidelines for the kilogram of cocaine offered to Agent Melick and for the use of a dangerous weapon. Baldwin also finds fault with his counsel's failure to challenge the report by calling Baldwin as a witness.

■ A defendant raising an ineffective assistance of counsel claim must meet a heavy burden. *United States v. Slaughter,* 900 F.2d 1119, 1124 (7th Cir.1990); *Harris v. Reed,* 894 F.2d 871, 877 (7th Cir.1990). We review a claim that a defendant received ineffective assistance of counsel under the two-part test established by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1983); *Slaughter,* 900 F.2d at 1124. To succeed, a defendant must demonstrate that his coun-

sel's performance was both constitutionally deficient and that the deficiency prejudiced the outcome of the proceeding. *Slaughter,* 900 F.2d at 1124; *Harris,* 894 F.2d at 877. Moreover, a defendant raising an ineffective assistance of counsel challenge must "overcome a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Slaughter,* 900 F.2d at 1124 (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065).

■ A review of the record of Baldwin's sentencing hearing demonstrates that his counsel was not constitutionally ineffective. At the initial phase of the sentencing hearing, Baldwin's counsel objected to the inclusion of the kilogram as "relevant conduct." On Baldwin's behalf his attorney also argued that Baldwin never intended to actually deliver the cocaine to Agent Melick. The district court then discussed Baldwin's presentence report with two probation officers. Defense counsel asked for a recess. After the recess, Baldwin's counsel withdrew his "factual objections" to the presentence report, but informed the court that he would "continue with the legal arguments as to relevant conduct." The district court adopted the statements of fact in the presentence report and adjourned the hearing. When the hearing was reconvened several weeks later, the district court found that Baldwin intended to sell a kilogram of cocaine to Agent Melick, and agreed with the recommendation in the presentence report that the kilogram should be included in the calculation of Baldwin's sentence. The inclusion of the kilogram of cocaine in determining Baldwin's sentence was done *despite the objection* of Baldwin's counsel.

■ Baldwin next argues that his attorney should have examined Agent Melick more thoroughly and should have called Baldwin as a witness. Baldwin, however, admitted that the presentence report's conclusion that he attempted to sell one kilogram of cocaine to Agent Melick was correct. Indeed, he told the probation officer who prepared the report that, on January 5, 1989, he had made efforts to find a

supplier of a kilogram of cocaine for sale to Agent Melick. Baldwin also admitted that when he realized that no one was at the home located at the 3800 block of Roosevelt Drive, he decided to rob Melick by attacking him with the meat cleaver. Baldwin's admissions more than adequately indicate why his counsel correctly realized that Baldwin had little to gain by testifying.

Moreover, very unfavorable evidence had already been introduced against Baldwin when Chernin decided to withdraw his factual objections to the presentence report. As indicated earlier, two probation officers explained to the court how they calculated Baldwin's recommended sentence. Agent Melick then testified that the confidential informant told him that he could purchase kilogram quantities of cocaine from Baldwin. Under the circumstances, Baldwin's counsel had a reasonable basis to conclude that continuing to examine Agent Melick or to introduce other evidence would only harm his client's interest. On the basis of the record, Baldwin cannot establish that the performance of his counsel at the sentencing hearing was constitutionally deficient.[1]

Baldwin also argues that the district court erred in several respects in applying the Sentencing Guidelines. First, he claims that the district court erred in enhancing his offense level under Guidelines §§ 1B1.3(a)(2) and 3D1.2(d), based upon the kilogram he promised to deliver to Agent Melick. He argues that there is no evidence in the record that that kilogram actually existed or that Baldwin attempted to negotiate a sale to the agent. Baldwin claims that the record reflects only that he attempted to steal the agent's money.

■ We will uphold a sentence pursuant to the Sentencing Guidelines if the guidelines were properly applied to factual conclusions that are not clearly erroneous. *United States v. Buggs*, 904 F.2d 1070, 1078 (7th Cir.1990); *United States v. Vopravil*, 891 F.2d 155, 157 (7th Cir.1989). We review for clear error a district court's determination of the quantity of drugs involved in an offense. *Buggs*, 904 F.2d at 1078. In *United States v. White*, 888 F.2d 490, 493 (7th Cir.1989), we held that Guidelines §§ 1B1.3(a)(2) and 3D1.2(d) "provide for cumulation of amounts of drugs from any acts that 'were part of the same course of conduct or common scheme or plan as the offense of conviction,' whether or not the defendant was convicted of possession or distribution of these additional amounts." *Vopravil*, 891 F.2d at 157 (quoting *White*, 888 F.2d at 493).

The district court's conclusion that Baldwin negotiated with Agent Melick for the sale of a kilogram of cocaine is supported by the record. As we noted previously, Baldwin admitted to the probation officer that he had planned to sell a kilogram of cocaine to Agent Melick on January 5, 1989, but was unsuccessful in finding his source. The confidential informant expressed the view to the agent that Baldwin could obtain kilogram quantities of cocaine. The record discloses that Baldwin's attempt to sell the kilogram of cocaine grew out of his earlier sale of four ounces of cocaine to Agent Melick. Thus, the district court did not clearly err in finding, under Guidelines §§ 1B1.3(a)(2) and 3D1.2(d), that Baldwin's attempt to sell the additional kilogram of cocaine to Special Agent Melick was "part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.*[2]

■ Baldwin also insists that the district court erred in enhancing his sentence pursuant to Guideline § 2D1.1(b)(1) for the use of a dangerous weapon in the commission

---

1. Baldwin's trial counsel did not object to the two level enhancement of Baldwin's sentence, pursuant to Guideline § 2D1.1(b)(1), for the use of a dangerous weapon in the commission of the offense. As we explain below, the district court, which did not have the benefit of our subsequent decision in *United States v. Rodriguez–Nuez*, 919 F.2d 461 (7th Cir.1990), erred in enhancing Baldwin's sentence pursuant to that Guideline. Baldwin's counsel was not constitutionally deficient in failing to raise that issue.

2. This issue might have been avoided by an admission at the time of the guilty plea that Baldwin had attempted to sell a kilogram of cocaine to Agent Melick.

of the offense. The version of Guideline § 2D1.1(b)(1) in effect at Baldwin's sentencing states that "[i]f a dangerous weapon (including a firearm) was possessed during commission of the offense, increase by 2 levels."[3] In *United States v. Rodriguez–Nuez*, 919 F.2d 461, 467 (7th Cir. 1990), which was decided after Baldwin was sentenced, we stated that "§ 2D1.1(b)(1) says that the weapons must be possessed "during the commission of the offense," and this must mean the offense *of conviction.*"

Baldwin pleaded guilty to possession with intent to distribute cocaine, which occurred on November 29, 1988. Baldwin attacked Agent Melick with the meat cleaver on January 5, 1989. The government concedes that it cannot show that Baldwin possessed the meat cleaver at the time he committed the offense of conviction. *Rodriguez–Nuez*, 919 F.2d at 467.[4] Therefore, the district court incorrectly increased his sentence by two levels pursuant to Guideline § 2D1.1(b)(1). Baldwin's offense level should have been 24, not 26.

Baldwin's other arguments are without merit.

Therefore, we REMAND this case to the district court and direct that the sentence be VACATED and that Baldwin be resentenced consistent with our opinion.

---

**3.** Guideline § 2D1.1(b)(1) now states that: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."

**4.** We note that the current version of Guideline § 2D1.1(b)(1) changes the government's burden. The revised Guideline requires the government

to prove only that the defendant "possessed" the weapon. Guideline § 2D1.1(b)(1), *Guidelines Manual*, (1991). Thus, in future cases the government will not be required to show that the defendant possessed the dangerous weapon during the offense of conviction.