9 F.3d 113
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sammy L. BRYANT, Defendant-Appellant.
 Nos. 92-1086, 93-1153.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 6, 1993.*
Decided Nov. 5, 1993.
 
 Before MANION and ILANA DIAMOND ROVNER, Circuit Judges, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 On November 2, 1990, criminal contempt charges were issued against Sammy L. Bryant for refusing to comply with a subpoena to appear as a government witness in a criminal trial that took place on September 17, 1990 in the Western District of Wisconsin at Madison. The charging document consisted of an order to show cause why Bryant should not be held in criminal contempt, with directions to issue a warrant for Bryant's arrest. See Fed.R.Crim.P. 42(b); 18 U.S.C. Sec. 401(3). On June 29, 1991, Bryant was arrested in Gallipolis, Ohio, and placed in the Gallia County Jail. The booking sheet, bearing Bryant's signature, appears to indicate that Bryant was being held on the authority of the United States Marshal's Office in Dayton, Ohio, for violating parole.[1] On July 1, 1991, a federal detainer was lodged against Bryant. The detainer did not specify the charge for which Bryant was to be held, or contain an "X" in the box indicating that the detainer was based on a warrant issued by the U.S. Parole Commission.
 
 
 2
 On August 14, 1991, a second federal detainer was lodged against Bryant, this time specifying that Bryant was wanted in Wisconsin for criminal contempt of court. On that day, he was also advised that he was wanted on a state misdemeanor charge, which was later dropped. A hearing was held in the U.S. District Court for the Southern District of Ohio on August 19, 1991, and Bryant was ordered removed to Wisconsin on August 22, 1991.
 
 
 3
 The day before Bryant's criminal contempt trial was set to begin, Bryant's court-appointed attorney, Bill Ginsberg, filed a motion to dismiss with prejudice on the ground that the Speedy Trial Act had been violated. See 18 U.S.C. Secs. 3161(b)-(c), 3162. The motion stated that Bryant had been held since June 29, 1991 on the contempt charge, that sixty-seven days had passed before Bryant's first court appearance, and that more than 100 days had passed since his arrest. The district court denied the motion without prejudice to its being renewed after trial.
 
 
 4
 At trial, the defense brought forward evidence that the subpoena which Bryant had failed to honor had never been date-stamped as received by the United States Marshal for the Southern District of Ohio, that there was some confusion in the marshal's office concerning who had actually served Bryant with a copy of the subpoena, and that the original subpoena had been misfiled and had not been returned to Wisconsin until approximately one week before trial. However, Bryant's probation officer, Alan Dietrich, testified that Bryant was served with a copy of the subpoena in Dietrich's presence at his office on September 14, 1990, three days before he was due to appear as a government witness in Wisconsin. Dietrich then accompanied Bryant to the marshal's office to obtain a travel advance, and Bryant signed a document certifying that he had been served with the subpoena and was without sufficient funds to answer it. Mary Johnson, a legal technician at the marshal's office, authorized a check for $185.35, dated September 14, 1990 and made out to Bryant. The jury found Bryant guilty of criminal contempt. Bryant filed a direct appeal, and a Fed.R.Crim.P. 33 motion for a new trial.
 
 
 5
 The district court held an evidentiary hearing in which Bryant was represented by attorney Reesa Evans. Bryant testified that when he was first arrested on June 29, 1991, he was shown a fax indicating that he was being detained for criminal contempt. Mary Johnson testified, admitting that subpoenas that had arrived at the marshal's office in September, 1990 were not being properly logged, that Bryant's subpoena was never logged, and that the date stamp machine had been out of order for a period of several months before Bryant's subpoena arrived at the office. She also admitted that she filled out the July 1, 1991 federal detainer against Bryant, and that she did not know whether that detainer was based on a violation of probation or some other charge. Attorney Bill Ginsberg also testified, stating that he was discharged by Bryant within days after the verdict, and that at that time he was under the impression that state and federal charges other than the criminal contempt charge had been pending against Bryant during the period between June 29, 1991 and August 14, 1991. At the close of trial, immediately prior to being discharged, Ginsberg did not attempt to develop additional evidence which might have supported a renewed Speedy Trial motion. The district court denied Bryant's new trial motion. Bryant's appeal of his conviction and of the denial of his new trial motion have been consolidated.
 
 
 6
 The issues resulting from the foregoing summary are: (1) whether the government violated Bryant's rights under Brady v. Maryland, 373 U.S. 83 (1963), by suppressing impeachment evidence that could have changed the outcome of his trial, and (2) whether Bryant's trial attorney Bill Ginsberg rendered ineffective assistance because he did not renew a motion to dismiss for violation of the Speedy Trial Act.
 
 
 7
 Bryant claims that his due process rights under Brady were violated because the government failed to disclose exculpatory evidence. 373 U.S. at 87. "Withholding evidence constitutes a Brady violation only if [the evidence] is both favorable to the accused and material." United States v. Polland, 994 F.2d 1262, 1266 (7th Cir.1993) (citing United States v. Douglas, 874 F.2d 1145, 1163-64 (7th Cir.), cert. denied, 493 U.S. 841 (1989)). Although impeachment evidence falls within the rule of Brady, such evidence is considered material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).
 
 
 8
 Bryant argues that if the government had disclosed the purchase order and receipt for a new date-stamp machine, and the subpoena log book showing that his subpoena had never been logged, he would have been able to impeach the testimony of the government's witnesses. At Bryant's criminal contempt trial, Mary Johnson admitted that the date-stamp machine at the marshal's office had been broken, and that at the time Bryant's subpoena was received, no subpoenas were being date-stamped. The government is therefore correct in arguing that the date-stamp machine purchase order and receipt tend to corroborate, rather than impeach, Johnson's testimony on this point.
 
 
 9
 Documents showing that Bryant's subpoena was never properly entered into the subpoena log book might have had some value in undermining the credibility of Johnson and of other witnesses employed by the United States Marshal. However, even if that testimony had been successfully impeached, there is no reasonable likelihood that the outcome of the trial would have changed. The government presented the testimony of Bryant's probation officer, Alan Dietrich, who testified that Bryant was served with the subpoena in his presence. Dietrich stated that he then accompanied Bryant to the marshal's office to aid him in obtaining a travel advance. To obtain the advance, Bryant signed a document in Dietrich's presence acknowledging that he had been served with the subpoena. This evidence, which did not depend on the credibility of any witness employed by the marshal's office, was sufficient to support the jury's verdict. There is therefore no reasonable probability that disclosure of the subpoena log book would have resulted in an acquittal. See Polland, 994 F.2d at 1267; United States v. Rossy, 953 F.2d 321, 324 (7th Cir.), cert. denied, 112 S.Ct. 1240 (1992).
 
 
 10
 As noted above, Bryant also alleged ineffective assistance of counsel. In order to prevail on this claim, Bryant must show that attorney Ginsberg's performance was inadequate under the standard of Strickland v. Washington, 466 U.S. 668 (1984). The Strickland standard requires Bryant to demonstrate that Ginsberg committed serious errors that "fell below an objective standard of reasonableness," id. at 687-88, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id. at 689, and that the challenged conduct "might be considered a sound trial strategy." Id. (citation and quotation omitted). Moreover, failure to satisfy either prong of the Strickland test is fatal to Bryant's ineffectiveness claim. See Velarde v. United States, 972 F.2d 826, 828 (7th Cir.1992); United States v. Slaughter, 900 F.2d 1119, 1124 (7th Cir.1990) (citing Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)).
 
 
 11
 Ginsberg's testimony at the evidentiary hearing reveals that (1) Ginsberg filed the Speedy Trial motion as soon as he was reasonably able to corroborate certain information that had been given to him by Bryant, (2) after the district court denied Ginsberg's original Speedy Trial motion one day prior to trial, Ginsberg made a strategic decision to devote his energy to defending Bryant at trial, and (3) once the trial was over, Ginsberg did not have sufficient time to renew the motion because he was discharged by Bryant. The reasonableness of Ginsberg's decision to handle the Speedy Trial claim in this way is further supported by the fact that in denying the motion, the district court indicated that even if Bryant were to establish violation of the Speedy Trial Act, the district court would be inclined to dismiss the contempt charge without prejudice to its being refiled.[2] Attorney Ginsberg's performance therefore did not fall below an objective standard of competent representation.
 
 
 12
 Since Bryant has not met the first prong of the Strickland test, his ineffective assistance of counsel claim is foreclosed. See, e.g., Slaughter, 900 F.2d at 1124. It may nevertheless be observed that although Bryant brought forward evidence showing gross irregularities in the federal detainer which was used to hold him from June 29, 1991 to August 14, 1991, the record contains ample evidence to support the district court's finding that Bryant was being held on a parole violation during that period. This evidence includes a booking sheet dated June 29, 1991, which indicates that Bryant was being held on a parole violation, and a habeas corpus petition filed by Bryant, in which Bryant himself stated that he was being held during that period for violating his parole. The entire period is thus excluded from the Speedy Trial Act calculation,[3] and Ginsberg's decision not to pursue the issue did not prejudice Bryant.
 
 
 13
 Accordingly, the judgment of the district court is
 
 
 14
 AFFIRMED.
 
 
 
 *
 Oral argument in this appeal was originally set for October 6, 1993. After consultation with the parties, the court sua sponte ordered that oral argument be vacated and that this case be submitted on the briefs and record. See Fed.R.App.P. 34(a), (f); Cir.Rule 34(f)
 
 
 [1]
 The booking sheet indicates that Bryant was officially charged with "P/V," an apparent reference to a violation of parole
 
 
 [2]
 When a district court determines that a defendant's Speedy Trial rights have been violated, the court retains the discretion to dismiss the indictment with or without prejudice. See 18 U.S.C. Sec. 3162(a)(2). The Speedy Trial Act does not favor either remedy. United States v. Taylor, 487 U.S. 326, 335 (1988). In denying Bryant's Speedy Trial motion, the district court stated that the defendant was unable to show that "the government [would be prevented from] initiating a new action if this one were to be dismissed." (R. at 36.) It was thus reasonable for Ginsberg to give lower priority to renewing the motion, and to concentrate instead on winning an acquittal at trial
 
 
 [3]
 See 18 U.S.C. Sec. 3161(h)